NUMBER 13-98-250-CV

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI

 ___________________________________________________________________ 



WAL-MART STORES, INC. , Appellant, 



v.

 

THOMAS J. LANE , Appellee. 

___________________________________________________________________ 



On appeal from the 214th District Court

 of Nueces County, Texas.

 ___________________________________________________________________ 



O P I N I O N

 

Before Justices Dorsey, Hinojosa, and Rodriguez

 Opinion by Justice Dorsey

 

 By six points of error, Wal-Mart seeks reversal of a multi-million dollar jury verdict awarded in favor of its former
employee, T.J. Lane. While employed by Wal-Mart, Lane complained that a female co-worker was "spreading rumors
about him" that he had sexually harassed her. Upon investigating Lane's complaint, Wal-Mart concluded that Lane had
indeed sexually harassed the female employee, and terminated Lane for that reason. Lane then brought suit against
Wal-Mart for slander, retaliatory discharge, negligent investigation, and sex discrimination. The jury found for Lane, and
awarded in excess of two million dollars in damages. We reverse and render judgment that Lane take nothing. 

Facts

 T. J. Lane was hired as a sales clerk with Wal-Mart, and was soon on the fast track career path. He was quickly promoted
to a lower-management position, and was in line to become a store manager. While in the management training program at
the Flour Bluff Wal-Mart in Corpus Christi, Texas, Lane met Suzanne Sparks, another Wal-Mart employee. 

 One evening, Lane worked with Suzanne Sparks in the store's cash office. The cash office was a small office equipped
with a security camera that recorded everything that happened there. The day after working with Sparks, Lane was told by
the store's personnel manager that someone was "spreading rumors" about him. Lane requested to meet with her about it. 
Per his request, he met with her, an assistant manager, and Joyce Wickham, another store employee. 

 During the meeting, Lane learned that Suzanne Sparks had told Wickham that he had flirted with her, discussed his sexual
fantasies and tried to kiss her when they were in the cash office the previous night. Both the personnel manager and
Wickham assured Lane that this was common behavior for Suzanne Sparks, and she had done the same with other
managers in the past. They said they wanted to warn him about her. Since the camera in the cash room was broken, the
encounter was not recorded. 

 Two weeks later, Lane was told by another store employee that Suzanne Sparks had told her that Lane had tried to grab her
crotch. Lane contacted the Wal-Mart District Manager, Dan Sanders. He told Sanders that Sparks was spreading "sexual
rumors" about him, and that he had been told that Sparks had done the same thing to other managers in the past. Sanders
told Lane he would investigate it, and instructed him to stay away from Sparks. 

 Sanders began his investigation. He spoke with the store manager, and together, they interviewed Suzanne Sparks and
took her statement. Sparks' written statement said that Lane "came on" to her in the office. She said that he tried to grab
her in the crotch and she told him to stop. He then told her about sexual practices involving multiple partners in which he
and his wife engaged. He asked her if she would meet him after work with one of her friends. She agreed to meet him, but
received a page and left the room. He later asked her friend why they didn't show up, but other than that nothing came of
the whole incident. She said that he had been nothing but professional since that time, so she had decided to "blow the
whole situation off and forget about it." 

 After taking Sparks' statement, Dan Sanders interviewed several other employees at the Flour Bluff store. He took
statements from Sparks' friend that was supposed to meet them that night, and the assistant manager and store employee
who attended the first meeting with Lane and the personnel manager. Sanders also contacted the Wal-Mart store where
Lane had previously worked. Upon completing the investigation, Sanders reported his findings to Wal-Mart's regional
personnel office and its legal department. 

 Sanders summoned Lane to his office and asked him about the allegations contained in Suzanne Sparks' statement. 
Specifically, he asked Lane if he had ever discussed his sexual fantasies with her, grabbed her in the privates, or invited her
on a "three-way" date with one of her friends. He also asked if Lane ever approached the friend and asked her why they did
not show up for the date. Lane denied it all. 

 Sanders then asked Lane if he had ever discussed his sexual fantasies with anyone at a Wal-Mart store where he previously
worked. At first Lane denied that as well, but then he remembered a conversation he had with a former boss there. He
admitted that he had a conversation with Kellie Masters, his former boss at the Greenwood Wal-Mart store, where she told
him that a woman had made a pass at her at a party and she told her husband about it, and he acted interested. She said to
Lane, "All you men can think about is having two women." Lane said, "Well, it goes the same way for women. . . All they
can think about is having two men." She responded, "Yeah, but your fragile little egos can't handle that." Lane said at that
point, they laughed and left. Lane was terminated after that meeting with Sanders. 

 Lane sued Suzanne Sparks and Wal-Mart for negligent investigation, retaliatory discharge, slander, and violations of the
Texas Commission on Human Rights Act and the Texas Labor Code. He sought compensatory and exemplary damages
plus attorneys' fees. The case was tried to a jury, which made the following findings: 

 1. Lane's sex was a motivating factor in Wal-Mart's termination of him; 

 2. Wal-Mart retaliated against Lane for reporting that he had been sexually harassed by Suzanne Sparks; 



 3. Wal-Mart slandered Lane with malice; 



 4. The slanderous statements were not made outside Wal-Mart's investigation of the incident or to any person who did not
have a business interest or duty in the matter; 



 5. Wal-Mart had voluntarily agreed to investigate the matter, but had conducted the investigation negligently. 



 The jury assessed actual damages at $2.3 million dollars and punitives at $800,000. The trial court entered judgment on
the verdict against Wal-Mart and Suzanne Sparks, jointly and severally. Wal-Mart appeals that judgment. 

I. Slander

 Wal-Mart first argues that the evidence was legally and factually insufficient to base a finding of slander. We agree, and
sustain this point of error. 

Standard of Review

 When reviewing for legal sufficiency, we must determine whether any evidence supports the challenged finding. In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). If so, it must be upheld. Id. In conducting the review, we consider only
the evidence and reasonable inferences that support the verdict and disregard all evidence and inferences to the contrary. 
Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 521 (Tex. 1997); Ellis County State Bank v. Keever, 888 S.W.2d 790,
794 (Tex. 1994). 

 When reviewing for factual sufficiency, we must determine whether the challenged finding is against the great weight and
preponderance of the evidence. We must consider and weigh all of the evidence, not just that evidence that supports the
verdict. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998). See Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996). We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the
verdict is clearly wrong and unjust. Maritime Overseas Corp., 971 S.W.2d at 407. See Ortiz, 917 S.W.2d at 772. A court
of appeals is not a fact finder. Accordingly, we may not pass upon the witnesses' credibility or substitute our judgment for
that of the jury, even if the evidence would clearly support a different result. Maritime Overseas Corp., 971 S.W.2d at 407. 
See Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986). If we reverse a trial court's judgment for factual
insufficiency, we must detail all the evidence relevant to the issue and clearly state why the jury's finding is factually
insufficient or so against the great weight and preponderance of the evidence that it is manifestly unjust. Maritime
Overseas Corp., 971 S.W.2d at 407. See Keever, 888 S.W.2d at 794; Pool, 715 S.W.2d at 635. We must explain how the
contrary evidence greatly outweighs the evidence supporting the verdict. Maritime Overseas Corp., 971 S.W.2d at 407. 
See Keever, 888 S.W.2d at 794; Pool, 715 S.W.2d at 635. 

 Wal-Mart contends that the evidence is insufficient to support the verdict because (1) no evidence exists that defamatory
statements were made by a vice principal of Wal-Mart; (2) no evidence exists that any slanderous statements caused harm
to Lane; and (3) the evidence is factually insufficient to overcome the investigatory privilege. Wal-Mart argues that the
privilege may only be overcome by clear and convincing evidence that a vice principal of Wal-Mart either (1) made the
statements with ill will or malice or (2) made the statements while entertaining serious doubts as to their truth. 

 1. Wal-Mart Agent

 First, Wal-Mart argues that only a vice principal could make Wal-Mart liable for defamation. A corporation can only act
through its officers or its agents. Corpus Christi Development Corp. v. Carlton, 644 S.W.2d 521 (Tex. App.--Corpus
Christi 1982, no writ). The rule is that a corporation may be held liable for defamation by its agent if such defamation is
referable to the duty owing by the agent to the corporation and was made in the discharge of that duty. Texam Oil Corp. v.
Poynor, 436 S.W.2d 129 (Tex. 1968). Also, a corporation may be liable for the tortious acts of a vice-principal of the
corporation. A vice-principal is a corporate officer, a person with authority to employ, direct, and discharge servants of the
master, or a person with whom the master has confided the management of the whole or part of a department or division of
the business. Fort Worth Elevator Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397, 406 (1934); Shearson Lehman Hutton,
Inc. v. Tucker, 806 S.W.2d 914, 926 (Tex. App.--Corpus Christi 1991, writ dism'd w.o.j.). Thus, Lane had the burden of
proving that he was slandered by an agent of Wal-Mart in his discharge of some corporate duty or by a Wal-Mart
vice-principal. 

 2. Investigatory Privilege

 Next, Lane had to prove that the statements made by Wal-Mart fell outside the scope of the qualified privilege that exists
for an employer to investigate allegations of wrongdoing. 

 Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse. . . . In
suits brought by private individuals, truth is an affirmative defense to slander. . . . 



 In addition, an employer has a conditional or qualified privilege that attaches to communications made in the course of an
investigation following a report of employee wrongdoing. . . . The privilege remains intact as long as communications
pass only to persons having an interest or duty in the matter to which the communications relate. . . . [However,] [p]roof
that a statement was motivated by actual malice existing at the time of publication defeats the privilege. . . . In the
defamation context, a statement is made with actual malice when the statement is made with knowledge of its falsity or
with reckless disregard as to its truth. . . . 



Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995) [emphasis added]. 

 The jury found that Wal-Mart slandered Lane, and made a separate finding of malice. However, it also found that none of
Wal-Mart's slanderous statements about Lane were made outside the course of an investigation of employee wrongdoing or
to any persons who did not have a business interest or duty in the matter to which the communications related. Because we
find no evidence to support the jury's finding of malice, we hold that Wal-Mart's statements were made with legal excuse,
and therefore, not slander. 

 Lane complains of essentially two categories of statements: those made by Suzanne Sparks and those made by Wal-Mart
management. We evaluate each in turn. 

 A. Statements made by Suzanne Sparks.

 Suzanne Sparks told her co-workers that Lane sexually harassed her. She also spoke about the incident during the course
of the investigation of Lane. In order to hold Wal-Mart liable for the defamatory acts of Suzanne Sparks, Lane would have
to show that Sparks was acting as an agent for Wal-Mart when she told anyone about the alleged harassment. She could be
an agent by either being a corporate vice-principal or if the defamatory statements were made in the course and scope of her
employment with Wal-Mart. 

 The evidence was that Suzanne Sparks was an employee of Wal-Mart who was paid an hourly wage. There is no evidence
that she had the authority or duty to speak for the corporation. She was not a manager or vice principal. Her duties with
the company did not involve speaking on behalf of the corporation. Even if she were to be considered to be an agent for
Wal-Mart, the defamation is not referable to any duty she had to the corporation. Wagner v. Caprock Beef Packers Co.,
540 S.W.2d 303, 306 (Tex. 1976) citing Texam, 436 S.W.2d at 129. We hold that Wal-Mart is not liable for any
defamatory statements made by Sparks. 

 B. Management's statements. 

 An employer has a conditional or qualified privilege that attaches to communications made in the course of an
investigation following a report of employee wrongdoing. Randall's Food Markets, 891 S.W.2d at 646. This privilege
remains intact as long as the communications pass only to persons having an interest or duty in the matter to which the
communications relate. Randall's Food Markets, 891 S.W.2d at 646; Butler v. Central Bank & Trust Co., 458 S.W.2d 510,
514-15 (Tex. Civ. App.--Dallas 1970, writ dism'd). However, proof that a statement was motivated by actual malice
existing at the time of publication defeats the privilege. Randall's Food Markets, 891 S.W.2d at 646. See Marathon Oil
Co. v. Salazar, 682 S.W.2d 624, 631 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.). In the defamation context a
statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard
about its truth. Randall's Food Markets, 891 S.W.2d at 646; Hagler v. Procter & Gamble Mfg. Co., 884 S.W.2d 771 (Tex.
1994) (per curiam). 

 The management statements fall into three general categories. The first category includes statements made during Dan
Sanders' investigation. An employer has a qualified or conditional privilege concerning all communications made in the
course of the investigation following a report of employee wrongdoing. See Randall's Food Markets, 891 S.W.2d at 646. 
The jury found that none of Wal-Mart's statements were made outside of the investigation of Lane nor to any person who
did not have a business interest in the matter. Randall's Food Markets, 891 S.W.2d at 646. These statements will not
support an award for defamation, unless the statements were made with actual malice, which was so found by the jury. We
will later evaluate the evidence supporting actual malice. 

 The second category includes statements Sanders made in relation to Lane's claim for unemployment benefits. Two
instances are relied on. The first are communications between Wal-Mart and the firm that represents it on unemployment
claims at the Texas Employment Commission. Lane maintains that statements between Wal-Mart and its representative at
the TEC hearings and Sanders' testimony at the TEC hearing constitute slander. However, all communications, oral or
written, made in the due course of a judicial proceeding are absolutely privileged. Gallegos v. Escalon, 993 S.W.2d 422,
424 (Tex. App.--Corpus Christi 1999, no writ); Rose v. First Am. Title Ins. Co., 907 S.W.2d 639, 641 (Tex. App.--Corpus
Christi 1995, no writ). 

 Judicial immunity extends to statements made in quasi-judicial proceedings before governmental executive officers,
boards, and commissions which exercise quasi-judicial powers. Gallegos, 993 S.W.2d at 425; Town of S. Padre Island v.
Jacobs, 736 S.W.2d 134, 143-44 (Tex. App.--Corpus Christi 1986, writ denied). The TEC has the powers to examine
witnesses, to compel their attendance, to hear the litigation of issues at a hearing, to hear and determine facts and make
decisions, to make binding orders and judgments, and the power to affect the personal or property rights of private persons. 
See Tex. Lab. Code Ann. §§ 212.003-006, 212.051, 212.053 (Vernon 1996). 

 The hearing before the TEC was quasi-judicial in nature. As a result Sanders was absolutely immune with respect to his
testimony before the TEC. His report of sexual harassment to his agent in preparation for the hearing related to this
quasi-judicial proceeding was also absolutely privileged. Those statements of Sanders cannot support the finding of
defamation against his principal, Wal-Mart. 

 The third category of statements are those made by a Wal-Mart assistant manager to Kellie Masters, Lane's former boss,
that Lane had been fired for sexual harassment. The evidence showed that Masters learned of Lane's termination from an
assistant manager at the Greenwood store whose name she could not remember. Lane contends, because an assistant
manager told Masters he had been fired for sexual harassment, there is a reasonable inference that either Brian Wall or Dan
Sanders told Wall's assistant managers. 

 However, the essence of defamation is a statement that is false. The evidence is uncontroverted that Wal-Mart discharged
Lane because of his sexual harassment of other employees. Sanders unambiguously so testified. There is no evidence that
they did not fire him for sexual harassment. Therefore, it cannot constitute a defamatory statement by Wal-Mart. Lane's
real complaint is that although he was fired for sexual harassment, he was not guilty of the charge. 

 If we view the alleged slander to be that Lane was guilty of sexual harassment, the problem remains of attributing
employee gossip to the employer, Wal-Mart. There is no evidence that the source of the rumor was an agent of Wal-Mart
so as to impose liability on it. 

 C. Malice. 

 In order for statements made by Wal-Mart during the course of its investigation to be slanderous, so as to overcome the
conditional investigatory privilege, Lane was required to prove that they were made with actual malice. He argues that
Wal-Mart's management-level employees made the slanderous statements with express and actual malice. He contends
there is evidence that Brian Wall, Dan Sanders, and David Carvajal harbored personal animosity toward him and such is
probative evidence that the defendant published the information either knowing of its falsity or with reckless disregard for
its falsity. 

 In Randall's Food Markets, the Texas Supreme Court stated that a plaintiff can defeat the privilege by proving that a
statement was motivated by actual malice existing at the time of publication. 891 S.W.2d at 646; Dixon v. Southwestern
Bell Tel. Co., 607 S.W.2d 240, 242 (Tex. 1980). In Hagler, supra, the Texas Supreme Court stated the legal standard for
proving actual malice in a defamation case, stating that 

 actual malice is a term of art which is separate and distinct from traditional common law malice. Actual malice in the
defamation context does not include ill will, spite or evil motive, but rather requires "sufficient evidence to permit the
conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Actual malice is not ill
will; it is the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true. 



Hagler, 884 S.W.2d at 771-72 (citation omitted); Fontenot Petro-Chem. & Marine Servs., Inc. v. LaBono, 993 S.W.2d 455,
461 (Tex. App.--Corpus Christi 1999, writ denied). See Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S.
657, 666 (1989) ("[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the
ordinary sense of the term."). 

 To establish "actual malice" in the defamation context the plaintiff must produce "clear and convincing evidence that the
defendant acted with a knowledge of falsity or with a 'high degree of awareness of . . . probable falsity.'" Connaughton,
491 U.S. at 688 (quoting Garrison v. Louisiana, 379 U.S. 64, 74 (1964)). See Casso v. Brand, 776 S.W.2d 551, 558 (Tex.
1989) (plaintiff must offer clear and convincing affirmative proof to support a recovery for defamation). A defamation
plaintiff may prove the defendant's state of mind through circumstantial evidence. Connaughton, 491 U.S. at 668. 

 We therefore review the evidence using the legal sufficiency standard to determine if there is any evidence of actual
malice. 

 Lane argues that there is sufficient evidence to show that various Wal-Mart agents repeated Suzanne Sanders' statements
with malice because they entertained serious doubts about the truth of those statements. First, he argues that Don Sanders
had numerous reasons to doubt Suzanne Sparks' allegations. Lane testified that when he informed Sanders about Sparks'
allegations, Sanders said, "I can see her doing that." Lane said Sanders told him he had encountered Sparks in either the
break room or an office wearing a skirt with a very long slit in it that was inappropriate for work and that Sparks had
maneuvered her legs to reveal herself to him. Lane also points out that he told Sanders that Joyce Wickham, Nola Lay, and
Kathy Rust had told him that the problems he was having with Sparks had happened to other managers in the past, and
gave Sanders the names of those managers. 

 Lane also contends that evidence regarding Sparks' reputation showed that she could not be believed. Joyce Wickham
testified that Sparks "kind of stretched the truth, sometimes," and that Sparks had a reputation for "joking around,
sometimes" about sex, claiming that men at work were coming on to her, and fantasizing that men found her attractive. On
cross-examination counsel asked her, "So when you're talking about her reputation, it wasn't a reputation for accusing
somebody at the store of harassing her, sexually, it was just that she was kind of bragging about men coming on to her and
that she believed she was attractive to men." Wickham said, "Yes." Kathy Rust testified that Sparks had a reputation as a
gossip who told untrue stories and for bragging about what men thought of her and that men found her attractive. 

 In contrast, Lane points out that he had a stellar reputation at work. Tina Murillo, the Flour Bluff store manager, testified
that she did not believe that the accusations of fondling were consistent with Lane's known character and reputation. David
Carvajal, Joyce Wickham, Nola Lay, Kathy Rust, and Kellie Masters shared the same opinion. 

 Lane also contends that the assistant manager David Carvajal's testimony, about a second-hand story from a Coca-Cola
vendor showed that Don Sanders entertained serious doubts of the veracity of Sparks' allegations. Carvajal testified that a
Coca-Cola vendor who was friendly with one of Sparks' friends told him that he heard a story that came from Sparks to the
friend and then to the vendor. The story was that Carvajal had sex with Sparks in the cash office. Carvajal confronted
Sparks with the story, and she told him that she and her friend had an argument and that her friend changed the story
intentionally and told it to the vendor in order to start a rumor. During trial, counsel asked Sanders, "David Carvajal talked
to you and gave you his report of what he heard from the Coca-Cola vendor, that is, the rumor that Suzanne Sparks was
spreading about sex in the cash office, correct?" He replied, "He shared with me as to the Coca-Cola vendor had heard
something from somebody he knew, yes." 

 Lane also argues that, during the course of the investigation, Sparks gave numerous inconsistent versions of how he
sexually harassed her: 

 Version 1 (told to Sanders and Murillo): Lane backed her into a corner, tried to kiss her, and grabbed her crotch from the
front, but not that he had fondled her breast. 



 Version 2 (told to Carvajal): Lane fondled her breast while the two of them were seated next to each other in the cash
office, but not that he had fondled her crotch or tried to kiss her. 



 Version 3 (told to Hickman): Lane grabbed her crotch from behind while she was bending over, kissed her, and lifted her
blouse and touched her breast. 



 Version 4 (told to [Kathy] Leija-Rust): Lane grabbed her crotch from behind while she was putting a box on a shelf, but
not that he tried to kiss her or touch her breast. 



 Version 5 (told to Wickham): Lane pushed her into a corner and tried to kiss her, but not that he fondled her crotch or
breast. 



At trial, Sanders explained what he believed regarding the inconsistencies: 



 Q. [D]o you agree that among the various statements and depositions that have been given that Suzanne Sparks has told at
least five different versions of what happened in the cash office? 



 A. Yes. 



 Q. And you agree they cannot all five be true, don't you? 



* * * * *

 

 A. Yes. But I also understand when somebody is telling a story, as a person listens to an individual tell a story, they very
well may not remember it exactly the same way that it is told to them, as well. 



 Lane also contends that Sanders asked Kellie Masters to fabricate a statement that Lane had made sexual advances toward
her. Lane testified that on the day he was terminated, Sanders told him he had such a statement from Masters. Masters
testified that after Lane was fired, Sanders mentioned to her that he was told that Lane had sexually harassed her and asked
her to write a statement. Her further testimony revealed that Sanders was referring to the conversation she had with Lane
that Lane had related to Sanders the day Lane was terminated. Masters told Sanders that she was not sexually harassed and
that she would not write a statement. There is no evidence, however, that Sanders asked her to fabricate a statement. 

 Lane also contends that David Carvajal himself entertained serious doubts about the truth of Suzanne Sparks' allegations. 
However, the evidence showed that Carvajal believed Sparks. He testified that she told him in detail what happened in the
cash room with Lane. Then, after Lane told Dan Sanders that Sparks was spreading "sexual rumors," Carvajal testified that
he went to Sanders and "told him everything [he] knew." 

 Finally, Lane argues that Wal-Mart's act of adopting and endorsing Sparks' sexual-harassment complaint as the reason for
terminating him and contesting his claim for unemployment benefits constituted slander. We disagree. Wal-Mart's
management had a right to believe, based on Sanders' investigation, that Lane had sexually harassed Sparks. Wal-Mart's
act of adopting and endorsing Sparks' complaint did not constitute publishing a defamatory statement to a third party
without legal excuse. 

 We conclude that this does not amount to clear and convincing evidence that anyone at Wal-Mart knew that Sparks'
statements about Lane were false or entertained such serious doubts about their truth as to amount to malice. Without a
finding of malice, the statements were cloaked with the investigatory privilege. Thus, they did not meet the element of
slander that the statements be made without legal excuse. Accordingly, we conclude that there is no evidence to show that
Wal-Mart committed slander against Lane. We sustain Wal-Mart's first issue. 

 II. Negligent Investigation

 By its second issue Wal-Mart asserts that Texas does not recognize a cause of action for negligent investigation. Wal-Mart
also challenges the legal and factual sufficiency of the evidence to support a negligence finding. The jury made the
following findings: 

 1. that Wal-Mart voluntarily agreed to investigate Lane's complaint against Suzanne Sparks and, by doing so, affected the
interests of Lane; and 



 2. that Wal-Mart was negligent in its investigation of Lane's complaint against Suzanne Sparks and that such negligence
proximately caused damages to Lane. 



 Lane reasons that the duty Wal-Mart assumed was that general duty of a volunteer: one who owes no legal duty, but who
gratuitously acts, assumes a duty to act with reasonable care so as to prevent harm to that person or to others. Otis Eng'g
Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983); Colonial Sav. Ass'n v. Taylor, 544 S.W.2d 116, 119-20 (Tex. 1976). 
However, these cases refer to situations where bodily injury or injury to property belonging to the party is involved. See
also Sibley v. Kaiser Foundation Health Plan of Texas, 998 S.W.2d 399, 403 (Tex. App.--Texarkana 1999, no pet.). 
Moreover, we believe that rule has no applicability here. An employer is no mere volunteer when faced with a complaint
of sexual harassment. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an
employee or potential employee on the basis of race, color, religion, sex, or national origin. 42 U. S.C. § 2000e-2(a)(1). It
has been held that sexual harassment so severe or pervasive as to alter the conditions of the victim's employment and create
a hostile work environment violates Title VII. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986); see also Tex.
Lab. Code § 21.051; Ewald v. Wornick Family Foods Corp., 878 S.W.2d 653, 659 (Tex. App.--Corpus Christi 1994, writ
denied) (recognizing the elements of a hostile work environment-sexual harassment claim under the Texas statute). Upon
receiving a complaint of sexual harassment, an employer has an affirmative duty to exercise reasonable care to prevent and
promptly correct any sexually harassing behavior. See Faragher v. City of Boca Raton, 524 U.S. 775, 805-06 (1998). An
employer who fails to investigate and remedy reported sexually harassing behavior risks being held vicariously liable for
the conduct of the harassing employee. Id. (holding that an employer's prompt correction of any sexual harassment by an
employee provides, in part, an affirmative defense to holding the employer vicarious liable for the sexual harassment). 
Accordingly, we find no application of the volunteer doctrine in this scenario. 

 Lane also argues we should recognize a new cause of action against employers. He urges this Court to impose upon
employers an implied duty to exercise reasonable care when conducting a sexual harassment investigation. However, we
refuse to create a new common law duty which would abrogate the traditional at-will employment contract. Absent a
contract, the relationship between worker and employer is "at will," except for a few very narrow exceptions, with each
party being able to end it at any time without reason or justification. See East Line & R.R.R. Co. v. Scott, 72 Tex. 70, 10
S.W. 99, 102 (1888); Winters v. Houston Chronicle Pub. Co., 795 S.W.2d 723, 726 (Tex. 1990); see also Sabine Pilot
Service, Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985) (recognizing a narrow exception for an employee discharged for
the sole reason of refusing to perform an illegal act). The Texas Supreme Court has refused to impose a general duty of
good faith and fair dealing upon employers under an at-will employment agreement. City of Midland v. O'Bryant, No.
97-0954, (Tx. Sup. Ct. April 6, 2000). Likewise, we decline to recognize a duty in this situation. 

 Under the traditional at-will employment agreement, Wal-Mart had the absolute right to fire Lane for any reason or for no
reason at all. Wal-Mart had no duty to perform any investigation before discharging Lane. Cf. Rios v. Texas Commerce
Bancshares, Inc., 930 S.W.2d 809, 816 (Tex. App.--Corpus Christi 1996, writ denied) (finding that employment at-will
contract cannot support a negligent investigation cause of action because employer has no duty to reasonably investigate
allegations against an employee). Thus, Wal-Mart owed no duty to Lane while performing the investigation. Lane has
directed us to no case in which a general negligence cause of action has been used against an employer for negligent
investigation, and we have not located any such case or closely analogous situations. See also Sibley, 998 S.W.2d at 403
(also finding no case where a general negligence theory has been used to support a cause of action against an employer for
negligent investigation); cf. City of Midland, id. Further, no Texas Supreme Court case has held that an employee is
protected from being fired as a result of a negligent employer investigation into a claim of sexual harassment. We hold that
there is no evidence to support the jury's answers to questions six and seven. We sustain the second issue. 

III. Retaliatory Discharge

 The jury found that Lane reported to Wal-Mart that he had been sexually harassed by Suzanne Sparks and that Wal-Mart
retaliated against him for reporting Suzanne Sparks. By its third issue Wal-Mart asserts that Lane did not make a complaint
of sexual harassment or take other protected action which would support a claim for retaliatory discharge. Wal-Mart argues
that Lane cannot state a claim for retaliatory discharge, or alternatively, that there is no evidence to support this claim. 

 Section 21.055 of the Texas Labor Code (Texas Commission on Human Rights Act (TCHRA))(1) provides that an
employer commits unlawful retaliation if the employer discriminates against a person who: (1) opposes a discriminatory
practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an
investigation, proceeding, or hearing. Tex. Lab. Code Ann. § 21.055 (Vernon 1996). When an employer discharges an
employee in retaliation for a complaint of sexual harassment the employer commits an unlawful employment practice under
section 21.055. SeeSouthwestern Bell Mobile Sys., Inc. v. Franco, 971 S.W.2d 52, 55 (Tex. 1998). 

 The TCHRA is modeled after federal civil rights law. One express purpose of the Act is to "provide for the execution of
the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." Tex. Lab. Code Ann. § 21.001(1)
(Vernon 1996). The Act purports to correlate "state law with federal law in the area of discrimination in employment." 
Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 485 (Tex. 1991). Thus, we look to analogous federal precedent for
guidance when interpreting the Texas Act. NME Hospitals, Inc., v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999). 

 In order to successfully assert a claim of retaliatory discharge the plaintiff must first establish by a preponderance of the
evidence a prima facie case of discrimination which when established gives rise to a presumption that the employer
unlawfully discriminated against the employee. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas
Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). To establish a prima facie case of retaliation a plaintiff
must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a
causal connection between participation in the protected activity and the adverse employment decision. Graves v. Komet,
982 S.W.2d 551, 554 (Tex. App.--San Antonio 1998, no writ); Azubuike v. Fiesta Mart, Inc., 970 S.W.2d 60, 65 (Tex.
App.--Houston [14th Dist.] 1998, no writ). 

 A plaintiff asserting a retaliation claim must establish that without his or her protected activity, the employer's prohibited
conduct would not have occurred when it did. McMillon v. Texas Dept. of Ins., 963 S.W.2d 935, 940 (Tex. App.--Austin
1998, no writ). That is, the plaintiff must establish a "but for" causal nexus between the protected activity and the
employer's prohibited conduct. McMillon, 963 S.W.2d at 940. The plaintiff need not establish that the protected activity
was the sole cause of the employer's prohibited conduct. Id. 

 The burden then shifts to the defendant/employer to rebut this presumption by articulating a legitimate, nondiscriminatory
reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802;Graves, 982 S.W.2d at 554. The
employer is not charged with the burden of persuading the trier of fact that it was actually motivated by the proffered
reason. Burdine, 450 U.S. at 254; Graves, 982 S.W.2d 554. Rather the employer meets its burden by setting forth through
admissible evidence a reason for dismissal legally sufficient to justify a judgment in its favor. Burdine, 450 U.S. at 254-55;
Graves, 982 S.W.2d at 554-66. 

 Upon the employer's articulation of a legitimate, nondiscriminatory reason for discharge the presumption raised by the
prima facie case is rebutted and it drops from the case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); Graves,
982 S.W.2d at 555. At this point the plaintiff carries the burden of proving that the employer's proffered reason is a pretext
for discriminatory conduct. McDonnell Douglas, 411 U.S. at 804; Graves, 982 S.W.2d at 555. A plaintiff meets this
burden when he or she either directly persuades the trier of fact that "a discriminatory reason more likely motivated the
employer or indirectly by showing that the employer's proffered reason is unworthy of credence." Burdine, 450 U.S. at
256; Graves, 982 S.W.2d at 555. The ultimate burden of persuading the factfinder that the employer engaged in
intentionally discriminatory conduct remains at all times with the plaintiff. Burdine, 450 U.S. at 253; Graves, 982 S.W.2d
at 555. 

 1. Standing.

 Wal-Mart argues that Lane did not have standing to bring a retaliatory-discharge claim because he did not participate in a
statutorily protected activity. We disagree. 

 Lane's testimony showed that he told Sanders that Sparks was spreading "sexual rumors" about him and that this was
making him uncomfortable and interfering with his work. The context of these rumors was that Lane had made unwelcome
sexual advances toward her. Although Sparks did not make these comments directly to Lane, she did direct them to Lane's
co-workers at the work place. These co-workers related the comments to Lane. We conclude that Lane had a reasonable
belief that Sparks was sexually harassing him and therefore could make a complaint according to section 21.055(3) of the
TCHRA. See Tex. Lab. Code Ann. § 21.055(3) (Vernon 1996). 

 2. Prima Facie Case

 During trial, Lane's counsel asked Sanders, "[I]sn't the real reason T. J. got fired was because he came to you and
complained about Suzanne [Sparks]?" Sanders replied that this was not correct. Counsel then asked him if he remembered
testifying in his deposition that if Lane "had not come to you and you had not started an investigation, that it's likely that
nothing else would have ever come of this?" Sanders replied, "With the possibility that David Carvajal had never said
anything, that's a possibility, or she [Sparks] had not decided to at a later date, yes." Counsel persisted by asking, "It's very
likely that if T. J. had not come to you, he would still be working at Wal-Mart, correct?" Sanders replied, "There's that
possibility." 

 This evidence does not show that but for Lane's reporting of Suzanne Sparks' harassment of him, he would not have been
terminated. Even without Lane's report, Sanders could have learned about it. Wal-Mart showed that Sanders terminated
Lane because the results of his investigation led him to conclude that Lane sexually harassed Sparks. This is a legitimate,
nondiscriminatory reason for Lane's termination. We hold that there is no evidence to show a causal connection between
Lane's report of the sexual rumors and Sanders' decision to terminate him. Thus, Lane did not established a prima
faciecase of discrimination. We sustain the third issue. 

IV. Sex Discrimination

 The jury found that Lane's gender was one of the motivating factors behind Wal-Mart's termination of him. Wal-Mart
challenges the legal and factual sufficiency of the evidence to support the finding of sex discrimination. We hold the
evidence is insufficient to support that finding. 

 Section 21.051 of the Texas Labor Code provides that: 

 An employer commits an unlawful employment practice if because of . . . sex . . . the employer . . . fails or refuses to hire
an individual, discharges an individual, or discriminates in any other manner against an individual in connection with
compensation or the terms, conditions, or privileges of employment. 



Tex. Lab. Code Ann. § 21.051(1) (Vernon 1996). 

 The evidence showed that Lane informed Sanders that he was upset because Sparks was spreading sexual rumors about
him. Sanders investigated the complaint, and as a result of that investigation, Sanders received information about what
Lane did to Sparks. Sanders made his determination to terminate Lane based upon the results of the investigation. Sanders
believed that Lane had sexually harassed Sparks and elected to terminate him for that reason. There is no evidence that
Lane's gender played any role in his decision to terminate Lane. We sustain the fourth issue. 

 Due to our disposition of the above issues we need not address Wal-Mart's remaining issues. Tex. R. App. P. 47.1. We
REVERSE the trial court's judgment and RENDER that Thomas J. Lane take nothing by his suit against Wal-Mart Stores,
Inc. 



J. BONNER DORSEY, 

Justice



Publish . 

Tex. R. App. P. 47.3(b). 



Opinion delivered and filed 

this 29th day of June, 2000. 

1. See generally Tex. Lab. Code Ann. §§ 21.001-556 (Vernon 1996 & Supp. 2000).