COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-011-CV

  
KENNITH 
RAY JOHNSON                                                       APPELLANT
 
V.
 
ALCON 
LABORATORIES, INC.                                                    APPELLEE
 
------------
 
FROM 
THE 67TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. 
Introduction
        Appellant 
Kennith Ray Johnson sued Appellee Alcon Laboratories, Inc. for race 
discrimination and retaliatory termination. Following a bench trial, the trial 
court rendered judgment for Alcon. In a single issue, Johnson claims that the 
trial court’s finding that Alcon did not retaliate against him is against the 
great weight and preponderance of the evidence. We will affirm.
II. 
Factual and Procedural Background
        Alcon 
hired Johnson, an African-American, to work at its Fort Worth vision care 
manufacturing facility. One day while Johnson was working on a production line, 
a coworker asked Johnson to go get some tape for the production line. Fifteen to 
twenty minutes passed, and Johnson had not returned with the tape. Believing 
that the production line was in jeopardy because Johnson had not returned with 
the tape, Chris Kjelland, the group leader, went to get the tape himself.
        Kjelland 
encountered Johnson coming from the back of the plant. Kjelland suspected that 
Johnson had been using the phone instead of getting the tape. Johnson said that 
he had been getting a “reject bin,” but Kjelland was not persuaded because 
Johnson was empty handed. Kjelland said he was frustrated because Johnson’s 
time away from the production line had been an issue in the past. Consequently, 
Kjelland tossed his security badge[2] at Johnson and 
allegedly said, “Boy, I’ve been looking for you.”
        After 
Johnson retrieved the tape, Kjelland suggested he and Johnson go to a conference 
room to discuss Johnson’s whereabouts when he was supposed to have been 
getting the tape. Johnson refused, and both men started yelling at each other. 
Two coworkers restrained Johnson, and Kjelland asked Johnson to leave the plant. 
Johnson left.
        The 
following Monday, Johnson complained to Kjelland’s supervisor, Mark Kubicki, 
and to Gerry Lingle, the human resources manager, about Kjelland’s alleged 
comment and conduct. Johnson said he was offended by Kjelland’s use of the 
term “boy” because it was a racially derogatory term. Kubicki talked to 
Johnson and Kjelland separately.
        Kjelland 
denied making any racial comment, but also claimed that, having been raised in 
Wisconsin, he did not know “boy” could be construed as a racial remark. A 
few days later, Kjelland admitted that he might have used the term “boy,” 
but said that he did not intend anything racial. Kubicki counseled Kjelland that 
the term should not be used in the workplace, and Kjelland did not use it again.
        Gerry 
Lingle assigned Paul Johnson, administrator of plant personnel and also an 
African-American, to investigate Johnson’s complaints. Following his 
investigation, Paul concluded that Kjelland’s upbringing made him unaware of 
the possible racial connotation of “boy,” that both parties had acted in the 
heat of the moment, and that the matter was resolved.
        Several 
months later, Kjelland received information from quality assurance about an 
error in a material lot code on a sterile material usage form that was completed 
by Johnson and a coworker, Daniel Ledesma. Johnson told Kjelland that the error 
was Ledesma’s, not his. Kjelland reviewed the documents and noticed that the 
information originally entered on the form by Ledesma was correct, but that 
Johnson had changed it to an incorrect material lot code. Kjelland was curious 
as to why a correct code had been changed to an incorrect code and why Johnson 
was correcting Ledesma’s work. Kjelland approached Ledesma and asked him about 
the correction. Ledesma said that he had been asked to correct the material lot 
code number but that he had refused. Kjelland took the matter to Kubicki, who 
immediately viewed the “correction” as “pretty close to falsification.” 
Kjelland approached Ledesma again, and Ledesma confessed that the form was not 
the original. Ledesma said Johnson had lost the original form and that he had 
helped Johnson recreate a new form.
        Kjelland 
and Kubicki reviewed the supporting documentation for the batch in question and 
concluded that Johnson and Ledesma had violated Alcon policy by failing to 
obtain management approval before recreating official production tracking 
documentation. Kjelland and Kubicki then met with Steve Wood-Smith, Kubicki’s 
manager, to discuss their findings and recommendations. Wood-Smith instructed 
them to obtain written statements from both Johnson and Ledesma regarding the 
specifics of the incident.
        After 
obtaining these statements, reviewing backup documentation, interviewing 
coworkers, and analyzing the form in question by comparing it to other documents 
completed by Johnson and Ledesma, Alcon senior management and human resources 
agreed with Kjelland and Kubicki’s recommendation that both Johnson and 
Ledesma be terminated for falsification and misrepresentation of company 
records. The termination decision was reviewed and approved by the vice 
president of human resources, who had no knowledge of Johnson’s prior 
complaint of racial discrimination. Keith Bell, who was vice president of 
quality assurance of surgical operations, made the final decision to terminate 
Johnson.
        Pursuant 
to Alcon policy, after his termination Johnson initiated an internal appeal. 
Several levels of management were present at the appeals hearing, including 
Lingle, Kubicki, Paul Johnson, and Keith Bell. During the hearing, Johnson 
denied that he falsified any documents, but he brought forward no new evidence. 
The appeals panel upheld Alcon’s decision to terminate Johnson for cause 
because of his violation of company policy.
        Johnson 
then filed suit against Alcon. Following a nonjury trial, the trial court 
rendered judgment for Alcon. Johnson perfected this appeal.
III. 
Standard of Review
        A 
trial court's findings of fact are reviewable for legal and factual sufficiency 
of the evidence to support them by the same standards that are applied in 
reviewing evidence supporting a jury's answer. Ortiz v. Jones, 917 S.W.2d 
770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 
1994). In reviewing an issue asserting that an answer is “against the great 
weight and preponderance” of the evidence, we must consider all of the 
evidence, both the evidence that tends to prove the existence of a vital fact as 
well as evidence that tends to disprove its existence. Ames v. Ames, 776 
S.W.2d 154, 158-59 (Tex. 1989), cert. denied, 494 U.S. 1080 (1990); Cain 
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). So considering the evidence, if a 
finding is so contrary to the great weight and preponderance of the evidence as 
to be manifestly unjust, the issue should be sustained, regardless of whether 
there is some evidence to support it. Watson v. Prewitt, 159 Tex. 305, 
320 S.W.2d 815, 816 (1959); In re King's Estate, 150 Tex. 662, 244 S.W.2d 
660, 661 (1951).
IV. 
Factually Sufficient Evidence
        Johnson 
alleges that the trial judge’s finding that Alcon did not retaliate against 
him in violation of section 21.055 of the Texas Labor Code is against the great 
weight and preponderance of the evidence. Tex. Lab. Code Ann. § 21.055 (Vernon 1996). 
Specifically, Johnson points to five pieces of evidence that he contends prove a 
violation of section 21.055: (1) Kjelland knew of Johnson’s discrimination 
complaint; (2) Kjelland was hostile to Johnson’s complaint by threatening to 
write up Johnson and by not telling Kjelland’s supervisor the truth about the 
”boy” incident; (3) Alcon did not follow its progressive discipline policy 
when it terminated Johnson; (4) Alcon’s stated reason for terminating Johnson 
was false as there was no evidence that Johnson placed false information on the 
form; and (5) Johnson had consistently received employee evaluations from Alcon 
that indicated good solid performance. Alcon argues that Johnson has misstated 
Kubicki’s testimony and that Alcon’s good faith belief that Johnson violated 
company policy, not any retaliatory motive, led to Johnson’s termination.
        Under 
the Texas Commission on Human Rights Act, an employer commits an unlawful 
employment practice if the employer retaliates or discriminates against a person 
who (1) opposes a discriminatory practice; (2) makes or files a charge; (3) 
files a complaint; or (4) testifies, assists, or participates in any manner in 
an investigation, proceeding, or hearing. Id. The Texas Legislature 
modeled chapter 21 of the Texas Labor Code after federal law for the express 
purpose of carrying out the policies of Title VII of the Civil Rights Act of 
1964 and its subsequent amendments. Id. § 21.001(1); see Soto v. El 
Paso Natural Gas Co., 942 S.W.2d 671, 677 (Tex. App.—El Paso 1997, writ 
denied); Ewald v. Wornick Family Foods Corp., 878 S.W.2d 653, 658 (Tex. 
App.—Corpus Christi 1994, writ denied).
        In 
order to successfully assert a claim of retaliatory discharge, the plaintiff 
must first establish by a preponderance of the evidence a prima facie case of 
retaliation, which when established gives rise to a presumption that the 
employer unlawfully retaliated against the employee. Tex. Dep’t of 
Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094 
(1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 
1817, 1824 (1973). To establish a prima facie case of retaliation a plaintiff 
must show that (1) he engaged in a protected activity, (2) an adverse employment 
action occurred, and (3) there was a causal connection between participation in 
the protected activity and the adverse employment decision. Graves v. Komet, 
982 S.W.2d 551, 554 (Tex. App.—San Antonio 1998, no pet.); Azubuike v. 
Fiesta Mart, Inc., 970 S.W.2d 60, 65 (Tex. App.—Houston [14th 
Dist.] 1998, no pet.).
        A 
plaintiff asserting a retaliation claim must establish that, without his 
protected activity, the employer’s prohibited conduct would not have occurred 
when it did. McMillon v. Tex. Dep’t of Ins., 963 S.W.2d 935, 940 (Tex. 
App.—Austin 1998, no pet.). That is, the plaintiff must establish a “but 
for” causal nexus between the protected activity and the employer’s 
prohibited conduct. Id. The plaintiff need not establish that the 
protected activity was the sole cause of the employer’s prohibited conduct. Id.
        The 
burden then shifts to the defendant/employer to rebut this presumption by 
articulating a legitimate, nondiscriminatory reason for the adverse employment 
action. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; Wal-Mart 
Stores, Inc. v. Lane, 31 S.W.3d 282, 295 (Tex. App.—Corpus Christi 2000, 
pet. denied). Upon the employer’s articulation of a legitimate, 
nondiscriminatory reason for discharge the presumption raised by the prima facie 
case is rebutted, and it drops from the case. St. Mary’s Honor Ctr. v. 
Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747 (1993); Lane, 31 
S.W.3d at 296.
        Considering 
all of the evidence, the trial court’s finding that Alcon did not retaliate 
against Johnson is supported by factually sufficient evidence. The evidence 
demonstrates Kjelland did not have independent authority to fire anybody; thus, 
the decision to terminate Johnson was made by several people at different levels 
of management—some of whom did not know Johnson’s race or have knowledge of 
his prior discrimination complaint until after the termination. The evidence 
further demonstrates that two of the people involved in making the termination 
decision—Kubicki and Paul Johnson—were African-American.
        Additionally, 
within one year prior to Johnson’s termination, Alcon had terminated four 
other non-African-American employees for falsification of records or 
documentation. Alcon’s discipline policy provides that employees may be 
terminated for a single offense of falsification or misrepresentation of company 
records. Thus, under this policy, Alcon could terminate Johnson for 
falsification or misrepresentation of records, even though all his employee 
evaluations indicated a “good solid performance.”
        Here, 
Johnson failed to show a causal connection between his complaint about the 
“boy” incident and Alcon’s decision to terminate him. See Lane, 31 
S.W.3d at 296 (holding there was no evidence to show a causal connection between 
employee’s report of the sexual rumors and employer’s/supervisor’s 
decision to terminate him). Consequently, Johnson did not establish a prima 
facie case of retaliation. See id. Thus, after considering and weighing 
all the evidence, we cannot say that the trial court’s finding that Alcon did 
not retaliate against Johnson is against the great weight and preponderance of 
the evidence. See Elgaghil v. Tarrant County Junior College, 45 S.W.3d 
133, 143 (Tex. App.—Fort Worth 2000, pet. denied) (holding trial court did not 
err in granting summary judgment where employee failed to offer any probative 
evidence to establish causal connection between his protected activity and any 
adverse employment decision). We overrule Johnson’s issue.
V. 
Conclusion
        Having 
overruled Johnson’s sole issue, we affirm the trial court’s judgment.
 
  
                                                          SUE 
WALKER
                                                          JUSTICE

  
PANEL 
B:   CAYCE, C.J.; LIVINGSTON and WALKER, JJ.
 
DELIVERED: 
March 11, 2004
 


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Johnson needed Kjelland’s badge to gain access to the area with the tape. 
However, Johnson did not seek out Kjelland to obtain his badge when the coworker 
asked Johnson to get the tape.