Kennith Ray Johnson v. Alcon Laboratories, Inc.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-011-CV

KENNITH RAY JOHNSON APPELLANT

V.

ALCON LABORATORIES, INC. APPELLEE

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Kennith Ray Johnson sued Appellee Alcon Laboratories, Inc. for race discrimination and retaliatory termination.  Following a bench trial, the trial court rendered judgment for Alcon.  In a single issue, Johnson claims that the trial court’s finding that Alcon did not retaliate against him is against the great weight and preponderance of the evidence.  We will affirm.

II.  Factual and Procedural Background

Alcon hired Johnson, an African-American, to work at its Fort Worth vision care manufacturing facility.  One day while Johnson was working on a production line, a coworker asked Johnson to go get some tape for the production line.  Fifteen to twenty minutes passed, and Johnson had not returned with the tape.  Believing that the production line was in jeopardy because Johnson had not returned with the tape, Chris Kjelland, the group leader, went to get the tape himself.

Kjelland encountered Johnson coming from the back of the plant.  Kjelland suspected that Johnson had been using the phone instead of getting the tape.  Johnson said that he had been getting a “reject bin,” but Kjelland was not persuaded because Johnson was empty handed.  Kjelland said he was frustrated because Johnson’s time away from the production line had been an issue in the past.  Consequently, Kjelland tossed his security badge
(footnote: 2) at Johnson and allegedly said, “Boy, I’ve been looking for you.”

After Johnson retrieved the tape, Kjelland suggested he and Johnson go to a conference room to discuss Johnson’s whereabouts when he was supposed to have been getting the tape.  Johnson refused, and both men started yelling at each other.  Two coworkers restrained Johnson, and Kjelland asked Johnson to leave the plant.  Johnson left.

The following Monday, Johnson complained to Kjelland’s supervisor, Mark Kubicki, and to Gerry Lingle, the human resources manager, about Kjelland’s alleged comment and conduct.  Johnson said he was offended by Kjelland’s use of the term “boy” because it was a racially derogatory term.  Kubicki talked to Johnson and Kjelland separately.

Kjelland denied making any racial comment, but also claimed that, having been raised in Wisconsin, he did not know “boy” could be construed as a racial remark.  A few days later, Kjelland admitted that he might have used the term “boy,” but said that he did not intend anything racial.  Kubicki counseled Kjelland that the term should not be used in the workplace, and Kjelland did not use it again.

Gerry Lingle assigned Paul Johnson, administrator of plant personnel and also an African-American, to investigate Johnson’s complaints.  Following his investigation, Paul concluded that Kjelland’s upbringing made him unaware of the possible racial connotation of “boy,” that both parties had acted in the heat of the moment, and that the matter was resolved.

Several months later, Kjelland received information from quality assurance about an error in a material lot code on a sterile material usage form that was completed by Johnson and a coworker, Daniel Ledesma.  Johnson told Kjelland that the error was Ledesma’s, not his.  Kjelland reviewed the documents and noticed that the information originally entered on the form by Ledesma was correct, but that Johnson had changed it to an incorrect material lot code. Kjelland was curious as to why a correct code had been changed to an incorrect code and why Johnson was correcting Ledesma’s work.  Kjelland approached Ledesma and asked him about the correction.  Ledesma said that he had been asked to correct the material lot code number but that he had refused.  Kjelland took the matter to Kubicki, who immediately viewed the “correction” as “pretty close to falsification.”  Kjelland approached Ledesma again, and Ledesma confessed that the form was not the original.  Ledesma said Johnson had lost the original form and that he had helped Johnson recreate a new form. 

Kjelland and Kubicki reviewed the supporting documentation for the batch in question and concluded that Johnson and Ledesma had violated Alcon policy by failing to obtain management approval before recreating official production tracking documentation.  Kjelland and Kubicki then met with Steve Wood-Smith, Kubicki’s manager, to discuss their findings and recommendations. Wood-Smith instructed them to obtain written statements from both Johnson and Ledesma regarding the specifics of the incident.

After obtaining these statements, reviewing backup documentation, interviewing coworkers, and analyzing the form in question by comparing it to other documents completed by Johnson and Ledesma, Alcon senior management and human resources agreed with Kjelland and Kubicki’s recommendation that both Johnson and Ledesma be terminated for falsification and misrepresentation of company records.  The termination decision was reviewed and approved by the vice president of human resources, who had no knowledge of Johnson’s prior complaint of racial discrimination. Keith Bell, who was vice president of quality assurance of surgical operations, made the final decision to terminate Johnson.

Pursuant to Alcon policy, after his termination Johnson initiated an internal appeal.  Several levels of management were present at the appeals hearing, including Lingle, Kubicki, Paul Johnson, and Keith Bell.  During the hearing, Johnson denied that he falsified any documents, but he brought forward no new evidence.  The appeals panel upheld Alcon’s decision to terminate Johnson for cause because of his violation of company policy.

Johnson then filed suit against Alcon.  Following a nonjury trial, the trial court rendered judgment for Alcon.  Johnson perfected this appeal.

III.  Standard of Review

A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer
.  Ortiz v. Jones
, 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel
, 881 S.W.2d 295, 297 (Tex. 1994).  
In reviewing an issue asserting that an answer is “against the great weight and preponderance” of the evidence, we must consider all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence.  
Ames v. Ames
, 776 S.W.2d 154, 158-59 (Tex. 1989), 
cert. denied
, 494 U.S. 1080 (1990); 
Cain v. Bain
, 709 S.W.2d 175, 176 (Tex. 1986).  So considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the issue should be sustained, regardless of whether there is some evidence to support it.  
Watson v. Prewitt
, 159 Tex. 305, 320 S.W.2d 815, 816 (1959); 
In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

IV.  Factually Sufficient Evidence

Johnson alleges that the trial judge’s finding that Alcon did not retaliate against him in violation of section 21.055 of the Texas Labor Code is against the great weight and preponderance of the evidence.  
Tex. Lab. Code Ann. 
§ 21.055 (Vernon 1996).  Specifically, Johnson points to five pieces of evidence that he contends prove a violation of section 21.055: (1) Kjelland knew of Johnson’s discrimination complaint; (2) Kjelland was hostile to Johnson’s complaint by threatening to write up Johnson and by not telling Kjelland’s supervisor the truth about the ”boy” incident; (3) Alcon did not follow its progressive discipline policy when it terminated Johnson; (4) Alcon’s stated reason for terminating Johnson was false as there was no evidence that Johnson placed false information on the form; and (5) Johnson had consistently received employee evaluations from Alcon that indicated good solid performance.  Alcon argues that Johnson has misstated Kubicki’s testimony and that Alcon’s good faith belief that Johnson violated company policy, not any retaliatory motive
, led to Johnson’s termination. 

Under the Texas Commission on Human Rights Act, an employer commits an unlawful employment practice if the employer retaliates or discriminates against a person who (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.  
Id
.
  
The Texas Legislature modeled chapter 21 of the Texas Labor Code after federal law for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.  
Id.
 § 21.001(1); 
see Soto v. El Paso Natural Gas Co., 
942 S.W.2d 671, 677 (Tex. App.—El Paso 1997, writ denied); 
Ewald v. Wornick Family Foods Corp.
, 878 S.W.2d 653, 658 (Tex. App.—Corpus Christi 1994, writ denied).

In order to successfully assert a claim of retaliatory discharge, the plaintiff must first establish by a preponderance of the evidence a prima facie case of retaliation, which when established gives rise to a presumption that the employer unlawfully retaliated against the employee.  
Tex. Dep’t of Community Affairs v. Burdine
, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094 (1981)
; McDonnell Douglas Corp. v. Green
, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).
  To establish a prima facie case of retaliation a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decision.  
Graves v. Komet
, 982 S.W.2d 551, 554 (Tex. App.—San Antonio 1998, no pet.); 
Azubuike v. Fiesta Mart, Inc.
, 970 S.W.2d 60, 65 (Tex. App.—Houston [14
th
 Dist.] 1998, no pet.).

A plaintiff asserting a retaliation claim must establish that, without his protected activity, the employer’s prohibited conduct would not have occurred when it did.  
McMillon v. Tex. Dep’t of Ins.
, 963 S.W.2d 935, 940 (Tex. App.—Austin 1998, no pet.).  That is, the plaintiff must establish a “but for” causal nexus between the protected activity and the employer’s prohibited conduct.  
Id.
  The plaintiff need not establish that the protected activity was the sole cause of the employer’s prohibited conduct.  
Id.

The burden then shifts to the defendant/employer to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action.  
McDonnell Douglas
, 411 U.S. at 802, 93 S. Ct. at 1824; 
Wal-Mart Stores, Inc. v. Lane
, 31 S.W.3d 282, 295 (Tex. App.—Corpus Christi 2000, pet. denied).  Upon the employer’s articulation of a legitimate, nondiscriminatory reason for discharge the presumption raised by the prima facie case is rebutted, and it drops from the case.  
St. Mary’s Honor Ctr. v. Hicks
, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747 (1993); 
Lane
, 31 S.W.3d at 296. 

Considering all of the evidence, the trial court’s finding that Alcon did not retaliate against Johnson is supported by factually sufficient evidence. 
 The evidence demonstrates Kjelland did not have independent authority to fire anybody; thus, the decision to terminate Johnson was made by several people at different levels of management—some of whom did not know Johnson’s race or have knowledge of his prior discrimination complaint until after the termination.  The evidence further demonstrates that two of the people involved in making the termination decision—Kubicki and Paul Johnson—were African-American.

Additionally, within one year prior to Johnson’s termination, Alcon had terminated four other non-African-American employees for falsification of records or documentation.  Alcon’s discipline policy provides that employees may be terminated for a single offense of falsification or misrepresentation of company records.  Thus, under this policy, Alcon could terminate Johnson for falsification or misrepresentation of records, even though all his employee evaluations indicated a “good solid performance.” 

Here, Johnson failed to show a causal connection between his complaint about the “boy” incident and Alcon’s decision to terminate him.  
See Lane
, 31 S.W.3d at 296 (holding there was no evidence to show a causal connection between employee’s report of the sexual rumors and employer’s/supervisor’s decision to terminate him).  Consequently, Johnson did not establish a prima facie case of retaliation. 
See id. 
 Thus, after considering and weighing all the evidence, we cannot say that the trial court’s finding that Alcon did not retaliate against Johnson is against the great weight and preponderance of the evidence.  
See  Elgaghil v. Tarrant County Junior College
, 45 S.W.3d 133, 143 (Tex. App.—Fort Worth 2000, pet. denied) (holding trial court did not err in granting summary judgment where employee failed to offer any probative evidence to establish causal connection between his protected activity and any adverse employment decision).  We overrule Johnson’s issue.

V.  Conclusion

Having overruled Johnson’s sole issue, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DELIVERED: March 11, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Johnson needed Kjelland’s badge to gain access to the area with the tape.  However, Johnson did not seek out Kjelland to obtain his badge when the coworker asked Johnson to get the tape.