Laura M. McMILLON and Judith Mitchell, Appellants,

v.

TEXAS DEPARTMENT OF INSURANCE, Appellee.

No. 03–97–00157–CV.

Court of Appeals of Texas, Austin.

Feb. 26, 1998.

Rehearing Overruled April 2, 1998.

Jane Shaw Lewis, Austin, for appellants.

Robert B. O'Keefe, Asst. Atty. Gen., Austin, for appellee.

Before ABOUSSIE, JONES and KIDD, JJ.

ABOUSSIE, Justice.

Appellants, Laura McMillon and Judith Mitchell, sued appellee, the Texas Department of Insurance, for alleged unlawful employment practices under the Texas Commission on Human Rights Act. *See* Tex. Lab. Code Ann. §§ 21.051, .055 (West 1996). A jury failed to find the Department unlawfully discriminated or retaliated against either McMillon or Mitchell. Appellants challenge the take-nothing judgment in six points of error. We will affirm the trial-court judgment.

## BACKGROUND

McMillon and Mitchell were employees of the Department. They are also members of minority ethnic groups. They both allege the Department unlawfully discriminated and retaliated against them, but different conduct on the part of the Department forms the basis of each woman's complaint.

### Judith Mitchell

The conduct of which Judith Mitchell complains began in 1991, when she alleges the

Department discriminated against her on the basis of her race and gender by failing to promote her. Mitchell filed a formal complaint with the Equal Employment Opportunity Commission. In March 1994, the Commission rendered a positive finding on her complaint. A conciliatory agreement was drafted at that time but was not signed by the parties. Up until that time, Mitchell's work performance evaluations had always been positive.

Shortly thereafter, the Department hired Audrey Selden and employed her in an upper-level management position. Selden became Mitchell's immediate supervisor. In May 1994, Selden reassigned Mitchell from the mid-level management position she had held to a new special projects division of the Department. Mitchell's pay remained the same after the transfer. Despite this, Mitchell viewed the reassignment as a negative transfer because she no longer had the same managerial responsibilities. The Department contends Mitchell's job performance declined around this time. Both sides seem to agree that after Mitchell was transferred to the special projects division, Selden and Mitchell had a tense working relationship.

The situation culminated in an angry exchange between Selden and Mitchell late Friday, June 17, 1994. Selden was upset with Mitchell and told her they would continue their conversation on Monday. Mitchell called in sick on Monday and Tuesday of the following week. While she was away from the office, she signed the conciliatory agreement resolving her 1991 discrimination complaint. She returned to the office on Wednesday, June 22. When she returned, Selden informed Mitchell that she could either resign or be fired. Mitchell took an administrative leave of absence and was finally terminated in August 1994. The Department did not offer her another position in a different division or under a different supervisor.

Mitchell filed a complaint of unlawful retaliation with the Texas Commission on Human Rights ("TCHR"). *See* Tex. Lab.Code Ann. §§ 21.055, .201 (West 1996). The TCHR notified her of her right to file a civil action in district court. *See id.* §§ 21.252, .253 (West 1996). Mitchell then sued the Department in district court for unlawful retaliation.

Mitchell argues the Department retaliated against her for pursuing her 1991 discrimination complaint. Specifically, she complains the Department transferred her to what was an essentially dead-end position, harassed her, and ultimately fired her. She contends her past work performance was excellent and that the Department's only reason for acting as it did was her involvement in the 1991 discrimination matter.

The Department responds that it did not fire Mitchell for making her discrimination complaint, but for her poor job performance after she was transferred to the special projects division. The Department cites specific examples of Mitchell's deficient performance but has no documentation of her deficiencies. The Department denies that there is any correlation between Mitchell's 1991 discrimination charge and her 1994 termination.

### Laura McMillon

The conduct of which Laura McMillon complains began in 1992. McMillon alleges one of her male co-workers sexually harassed her from about that time until early 1994. She cited specific examples of offensive conduct. For example, she alleged the male co-worker made unsolicited comments about oral sex and once gave McMillon a plastic penis wrapped in a "bloody" bandage as a "joke." McMillon complained to the Department of this conduct in February 1994.

After the Department investigated her complaint, the Department transferred the male co-worker to a different division to work in a non-managerial capacity. The Department reduced the co-worker's pay by $5,000 a year, put him on a ninety-day probation, required him to review the agency's sexual harassment policy, and required him to attend sexual-harassment and racial-discrimination sensitivity training.

While it was investigating McMillon's sexual harassment complaint, the Department became aware that several of the employees McMillon supervised had complaints about her communication skills and management style. As a result of these complaints and a perceived inability to improve over time, Au-

drey Selden transferred McMillon in June 1994 to the special projects division where Mitchell worked. McMillon's pay remained the same after her transfer. Like Mitchell, McMillon viewed her transfer negatively because she thought it would not allow her to use her skills. The Department contends McMillon's job performance declined after her transfer to the special projects division. The Department had little, if any, negative documentation of McMillon's job performance.

In August 1994, McMillon filed a complaint with the TCHR, alleging she suffered: (1) sexual harassment, (2) discrimination on the basis of her race, and (3) retaliation for her earlier sexual harassment complaint. In mid-October 1994, McMillon met with Department representatives in an effort to resolve her TCHR complaint. The parties could not agree. In early November, the Department fired McMillon. The TCHR later notified McMillon of her right to file a civil action in district court. *See* Tex. Lab. Code Ann. §§ 21.252, .253. McMillon sued the Department along with Mitchell.

McMillon argues the Department discriminated and retaliated against her by failing to fire the co-worker who allegedly harassed her, effectively demoting her in response to her complaint, and ultimately firing her. She contends she had an excellent work history and that the Department's actions were the direct result of her sexual harassment complaint.

The Department, on the other hand, contends it did not base its actions on McMillon's sexual harassment complaint. The Department argues it took appropriate action with respect to the male co-worker. The Department also cites specific examples of McMillon's work deficiencies.

Both Mitchell and McMillon sued for reinstatement to suitable positions with the Department, actual damages, attorneys' fees, costs of court, and pre-and post-judgment interest. Mitchell's case was submitted to the jury on a retaliation theory alone while McMillon's was submitted on retaliation and discrimination theories. The jury failed to find the Department committed any retaliation or discrimination. The court accordingly rendered judgment that Mitchell and McMillon take nothing. The plaintiffs filed a motion for new trial alleging the evidence was factually insufficient to support the jury's non-finding. The motion was overruled.

Mitchell and McMillon appeal by six points of error, alleging the evidence was factually insufficient[1] to support all of the jury's non-findings. Points of error one, three, and five additionally allege the trial court erred in failing to grant a new trial based on the factual insufficiency of the evidence.

## DISCUSSION

■ We generally review a trial court's failure to grant a motion for new trial for an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). However, when the motion for new trial was based on a challenge to the sufficiency of the evidence supporting the verdict, we apply the appropriate sufficiency of the evidence standard to evaluate the trial court's denial of the motion. *Mandell v. Hamman Oil & Ref. Co.*, 822 S.W.2d 153, 158 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Therefore, in this case we use the standard applicable to review of the factual sufficiency of the evidence supporting the jury's failure to find facts.

■ We review the factual sufficiency of the evidence supporting the jury's failure to find a fact under the same standard we use when reviewing a jury's affirmative finding. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988). That is, we weigh all the evidence and set aside the verdict only if it was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.; Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We must be mindful of the fact that the jury was not

---

1. Although appellants' points of error all speak in terms of the factual sufficiency of the evidence, appellants pray that we reverse the jury verdict and render judgment in their favor. The proper remedy for a verdict overturned on factual insufficiency grounds is a reversal and a remand for a new trial. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

convinced by a preponderance of the evidence, and we may not reverse the judgment merely because we conclude the evidence preponderates toward an affirmative answer. *Cropper,* 754 S.W.2d at 651; *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988).

### McMillon's Discrimination Claim

In points of error three and four, McMillon challenges the jury's failure to find that the Department unlawfully discriminated against her by subjecting her to sexual harassment. Pursuant to the Texas Commission on Human Rights Act ("TCHRA"), an employer commits an unlawful employment practice if the employer discriminates against an employee on the basis of gender. *See* Tex. Lab.Code Ann. § 21.051. Texas courts have recognized sexual harassment as a form of unlawful employment discrimination. *See Ewald v. Wornick Family Foods Corp.,* 878 S.W.2d 653, 658 (Tex.App.—Corpus Christi 1994, writ denied); *Syndex Corp. v. Dean,* 820 S.W.2d 869, 871 (Tex.App.—Austin 1991, writ denied). Courts have recognized two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment and hostile work environment sexual harassment. *See id.*

■ McMillon asserts the Department subjected her to a sexually hostile work environment. The elements of this type of claim are: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ewald,* 878 S.W.2d at 659 (citing *Henson v. City of Dundee,* 682 F.2d 897, 909 (11th Cir.1982)); *Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir.1996).[2]

■ The Department defended against McMillon's claim largely by presenting evidence that it took prompt remedial action upon receipt of her complaint. Prompt re-medial action is that which is reasonably calculated to end the harassment. *See Landgraf v. USI Film Prods.,* 968 F.2d 427, 430 (5th Cir.1992), *aff'd,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). When McMillon complained of her co-worker's unwanted sexual comments and conduct, the Department quickly investigated the allegations. The Department put the co-worker on administrative leave while the investigation was pending. The Department concluded that McMillon had been the subject of unwanted sexual harassment and consequently demoted the co-worker. Specifically, the Department put the co-worker on a ninety-day probationary period, reduced his pay by $5,000 per year, transferred him away from McMillon by putting him in a non-managerial position in another division, required him to attend sexual harassment awareness training, and required him to review the agency's policies regarding sexual harassment.

■ McMillon argues these actions were not remedial for two reasons. First, she argues the Department should have fired the co-worker. An employer may take prompt and remedial action without firing the offending employee. *Cf. Landgraf,* 968 F.2d at 430 (appellate court upheld district court's finding that employer took prompt remedial action even when employer continued to allow offending employee to work in victim's area). In fact, the record in this case supports the inference that the harassment stopped after the Department transferred the co-worker.

Second, McMillon argues the Department's investigator was biased against her. Specifically, she complains that the investigator focused not only on the sexual harassment complaint but also on other employees' complaints about McMillon's communication skills and managerial abilities. The jury was free to disregard this argument, especially in light of the fact that the investigation substantiated McMillon's complaint against her co-worker. Based on these facts, we conclude the verdict on the discrimination issue is not against the overwhelming weight of the

---

**2.** We may look to federal civil rights law in interpreting cases brought under the Texas Commission on Human Rights Act. *See City of Austin v. Gifford,* 824 S.W.2d 735, 739 (Tex.App.—Austin 1992, no writ).

evidence. We, therefore, overrule points of error three and four.

### McMillon's Retaliation Claim

In points of error five and six, McMillon challenges the jury's failure to find that the Department retaliated against her for opposing a discriminatory action.

■ An employer commits unlawful retaliation if the employer discriminates against a person who: (1) opposes a discriminatory practice, (2) makes or files a charge, (3) files a complaint, or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. Tex. Lab.Code Ann. § 21.055. A plaintiff asserting a retaliation claim must establish that without her protected activity, the employer's prohibited conduct would not have occurred when it did. *See Department of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex.1995). In other words, the plaintiff must establish a "but for" causal nexus between her protected activity and the employer's prohibited conduct. *Texas Natural Resource Conservation Comm'n v. McDill*, 914 S.W.2d 718, 723 (Tex.App.—Austin 1996, no writ). The plaintiff need not establish, however, that her protected activity was the *sole* cause of the employer's prohibited conduct. *Hinds*, 904 S.W.2d at 635.

■ The Department produced evidence at trial that it did not transfer or fire McMillon because of any complaint she made, but because of her deficient job performance. Several Department employees whom McMillon had supervised testified she was not an effective manager and that McMillon had once disclosed confidential or sensitive information about other employees. Audrey Selden testified she transferred McMillon to the special projects division in part because of these problems and in part because McMillon had unique skills that would benefit the new division. Furthermore, Selden testified that McMillon was not cooperative once she had been transferred, and that McMillon often complained of her job assignments. The evidence also suggests McMillon had trouble performing the tasks assigned to her and that, consequently, some of the projects had to be reassigned to other people.

Selden testified she based her decision to terminate McMillon on those facts alone.

■ To counter this evidence, McMillon attempted to explain why she did not finish the tasks assigned to her. She also presented witnesses who testified that Selden was biased against people who filed discrimination complaints. An employer may dislike an employee for making a discrimination complaint. The employer's conduct is not unlawful, however, unless the dislike is part of the reason the employer takes adverse action against the employee. *See Hinds*, 904 S.W.2d at 635. In any event, the jury was free to disbelieve this evidence and believe the evidence that favored the Department.

McMillon also emphasized that the Department had very little documentation of her allegedly poor work performance. She cites *Southwestern Bell Mobile Sys., Inc. v. Franco*, 951 S.W.2d 218, 221 (Tex.App.—Corpus Christi 1997, pet. requested), for support. In *Franco*, a jury found an employer had unlawfully retaliated against two employees by firing them. The employer appealed the verdict by challenging the legal and factual sufficiency of the evidence supporting it. The court of appeals upheld the verdict, noting among other things that the employer had no documentation of its professed reason for terminating the employees. *See Franco*, 951 S.W.2d at 223. Nevertheless, the case does not stand for the proposition that lack of documentation supports a charge of unlawful retaliation as a matter of law, as McMillon suggests. Under the facts of this case, we believe the jury was free to believe the Department's professed reason for terminating McMillon, even though the Department did not have much documentation of its reasoning.

In light of the evidence detailed above, we conclude the overwhelming weight of the evidence did not favor McMillon on the causation element of her retaliation claim. We, therefore, hold that the jury's verdict regarding McMillon's retaliation claim was supported by factually sufficient evidence. Accordingly, we overrule points of error five and six.

### Mitchell's Retaliation Claim

In points of error one and two, Mitchell challenges the jury's failure to find that the Department retaliated against her for her pursuit of her 1991 discrimination complaint. We have already set forth the standard of proof for the causation element of a retaliation claim.

 The Department presented evidence that it did not fire Mitchell for her involvement in the discrimination complaint, but for her deficient job performance. Audrey Selden testified that she had a "hands on" management style, which Mitchell did not have. Selden testified she transferred Mitchell to the special projects division for that reason. Furthermore, Selden testified Mitchell became difficult to work with after the transfer. Several Department employees testified that Mitchell did not complete work assignments timely, and Selden testified the work Mitchell did complete was unsatisfactory. Selden also suggested Mitchell deliberately misled another employee by suggesting the employee was about to be fired when the employee's job performance was not in question. According to Selden, these were the only reasons forming the basis for Mitchell's termination.

Mitchell countered the Department's evidence by presenting explanations for her untimely and unsatisfactory work. She, like McMillon, emphasized the fact that the Department had no documentation of her allegedly poor work performance. As discussed above, the lack of documentation in and of itself is not enough to establish a retaliation claim.

Mitchell also focused on the fact that Selden revealed her intent to fire Mitchell one day after Mitchell had signed the conciliatory agreement resolving the 1991 discrimination charge. The Department pointed out, however, that Selden did not know the conciliatory agreement was before Mitchell for signing when Selden was considering firing Mitchell. Furthermore, the record suggests Mitchell suspected on Friday, June 17, that she might be fired when she returned to work. Mitchell then stayed away from work for the next two work days and arranged to sign the conciliatory agreement before she returned to work. In short, the record supports an inference that *Mitchell* might have arranged the close temporal proximity between the resolution of the 1991 discrimination charge and her ultimate termination. The jury was free to believe the Department's witnesses and disbelieve Mitchell. We conclude the overwhelming weight of the evidence did not favor Mitchell on the causation element of her retaliation claim. We, therefore, hold the evidence was factually sufficient to support the jury's verdict. We overrule points of error one and two.

### Juror Affidavits

 We note that McMillon and Mitchell supported their motion for new trial with affidavits from six jurors. These six jurors averred that they had made a mistake in reaching their verdict; five of them suggested they had been confused by the jury charge. These affidavits do not invalidate the evidence in the record, and if anything, suggest the jury charge might have been inadequate. McMillon and Mitchell have not asserted any complaint regarding the jury charge, either before the charge was submitted, in their motion for new trial, or in their appeal. The only challenges they assert pertain to the factual sufficiency of the evidence supporting the verdict.

### CONCLUSION

In light of our discussion of the evidence above, we affirm the take-nothing judgment of the trial court.