# Supreme Court of Texas

════════

No. 23-0376

════════

Fossil Group, Inc.,
*Petitioner*,

v.

Nicole Harris,
*Respondent*

═══════════════════

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

═══════════════════

**Argued March 21, 2024**

JUSTICE DEVINE delivered the opinion of the Court.

JUSTICE BLACKLOCK filed a concurring opinion.

JUSTICE YOUNG filed a concurring opinion, in which Chief Justice Hecht joined.

The central question in this workplace sexual-harassment case is whether the summary-judgment record bears any evidence that a company knew or should have known its employee was being harassed and failed to take prompt corrective action. The court of appeals reversed the trial court's judgment for the company, holding that the

employee's testimony that the company failed to respond to an email she allegedly sent through an anonymous reporting system is some evidence of the company's knowledge and failure to act.[1]

The parties dispute whether the company received the email, but we hold that even if it did, there is no evidence that its subsequent actions were not prompt and remedial. Mere days after sending the putative email, the employee voluntarily resigned, and she has not identified any instances of interim harassment. The following week, the store manager met with the employee after learning about the harassment from another source and then immediately reported the matter to human resources. By the end of the month, the company had fired the harasser. We also hold that the employee did not raise a fact issue that the company knew or should have known about the harassment before the date of the email. Accordingly, we reverse the court of appeals' judgment and render judgment reinstating the trial court's take-nothing judgment.

**I**

Fossil Group, Inc. hired Nicole Harris to work as a seasonal sales associate at its store in Frisco, Texas. Harris started in November 2018; Fossil promoted her to a regular sales associate in January 2019; and she worked in that position until she resigned in early May 2019.

---

[1] 682 S.W.3d 896, 905 (Tex. App.—Dallas 2023).

During Harris's brief term of employment, Carey Zaborowicz was the store manager and Leland Brown was an assistant store manager.

Shortly after Harris was hired, Brown began exchanging social-media messages with her. Brown found her profile because Harris kept it public to promote her modeling career. On December 3, Brown sent her obscene and sexually explicit videos and photos of himself with sexually suggestive messages. Harris blocked him on social media, but at his request, she later unblocked him, and the exchange continued.

From December to April, Brown sent Harris social-media messages about her appearance and posted emojis on her modeling photos. At work, according to Harris, Brown would comment on her appearance, brush up against her, take pictures of her from behind, and follow her to her car. In April, Harris again blocked Brown on social media, and after April 16, she received no further messages. Harris told two seasonal sales associates about Brown's conduct. But she did not feel comfortable telling someone with authority over him and did not speak to management about the harassment until after she resigned.[2]

Around the same time, Brown also sexually harassed K.K., another sales associate, through social media.[3] K.K. later expressed discomfort to a "Third Key" employee, a store keyholder whose role is to

---

[2] Harris acknowledged that while employed at Fossil, she was aware of the company's policy against sexual harassment, the mechanisms to report harassment, and where to find additional details about the policy.

[3] Brown admitted that between January and April, he sent K.K. more than ten messages expressing how he "wanted to do sexual things with her or tell her she looked good."

assist the store manager. At the end of April, the Third Key employee told Zaborowicz that Brown might be sexually harassing K.K. Zaborowicz asked the Third Key employee to tell K.K. to come talk to her, but K.K. did so only after Zaborowicz reached out to her directly in early May.[4]

In February, Harris became dissatisfied with her work schedule. During that time, Harris was working two retail jobs—morning shifts at Athleta and afternoon shifts at Fossil[5]—along with taking college courses and babysitting. Harris wanted to switch to morning shifts at Fossil to avoid working with Brown. But she did not mention this reason to management and was unaware that Fossil did not schedule sales associates for weekday mornings because sales were not part of the job responsibilities for those shifts.

In April, Harris worked only four shifts at Fossil—on April 3, 6, 19, and 28. Then, on May 2, Harris sent the following email to store management:

> I'm having trouble with my schedule and my jobs putting everything together. I'm very sorry to do this but I need to make Saturday [May 4] my last day with the team. I'm getting over exhausted and putting a lot of stress on myself trying to juggle 3 jobs and finish school to graduate.

Her last and only shifts in May were on May 3 and 4.

---

[4] Zaborowicz explained that she did not immediately reach out to K.K. or report the possible harassment in late April because K.K. had told the Third Key employee in confidence and Zaborowicz wanted K.K. to feel comfortable coming to her as the manager.

[5] Harris worked six afternoon shifts in February and thirteen in March.

After sending her resignation email, Harris met with K.K. and discussed Brown's harassing conduct. On May 8, another Third Key employee reported to Zaborowicz that K.K. had mentioned Brown's misconduct and that Harris might also be a victim. Zaborowicz immediately called Harris, who described the sexually explicit content Brown had sent her. The next day, Zaborowicz met with both Harris and K.K. in person and reported the harassment to human resources the same day. After an investigation, Fossil fired Brown at the end of that month. In the interim, neither Harris nor K.K. worked with Brown because Harris had voluntarily resigned and K.K. was studying abroad.

Harris sued Fossil for a hostile work environment under Chapter 21 of the Texas Labor Code.[6] Harris alleged that in "late April 2019," she "began efforts to formally report" Brown's conduct and "sent an email in response to an in-store company survey in which she stated she felt she was being sexually harassed" but "received no response." When Fossil deposed Harris, she claimed she sent the email through Fossil's anonymous reporting system, not in response to a survey.[7]

Fossil moved for traditional and no-evidence summary judgment. Among other grounds, Fossil argued that there is no evidence it knew or should have known about the harassment but failed to remedy the situation and, to the contrary, the undisputed facts conclusively

[6] Harris has conceded that Fossil is not vicariously liable for Brown's actions because he "was not a supervisor in the sense he did not have authority on his own to alter her conditions of employment."

[7] Harris testified that the email described the sexually explicit nature of the videos and pictures and Brown's conduct of "taking pictures of me in the store without me even noticing" and "brushing up against me."

5

establish that Fossil took prompt remedial action. Specifically, Fossil cited evidence that: (1) a report from the anonymous reporting system shows no record of any complaints related to its Frisco store while Harris was employed; (2) the company learned about Brown's misconduct only after Harris resigned; and (3) it then took prompt remedial action by proactively reaching out to Harris and subsequently firing Brown.

In response, Harris asserted that Fossil knew or should have known about the harassment because (1) Harris had told two coworkers and K.K. that Brown was harassing her; (2) two Third Key employees learned of Brown's harassing conduct through K.K.; and (3) the store manager, Zaborowicz, found out about Brown's misconduct from the Third Key employees in late April and early May. The response also states that Harris "believes she sent" the email reporting the harassment "[i]n late April" but "she cannot locate that email." For support, Harris attached the transcript of her own deposition as well as testimony from Brown and Zaborowicz.[8]

The trial court granted Fossil's motion for summary judgment, and Harris appealed. The court of appeals reversed, holding that Harris's testimony about her email is some evidence that Fossil knew or should have known about Brown's misconduct.[9] The court then

---

[8] At the time of her response, Harris had a pending motion for leave to file her third amended petition. In that petition, Harris pleaded additional facts based on Brown's deposition testimony that his previous employer, Old Navy, had fired him for sexual harassment. Harris also relied on these facts as summary-judgment evidence "that a prudent employer knew or should have known" about Brown's sexual misconduct. The trial court struck her amended petition as untimely, and Harris has not challenged that ruling on appeal.

[9] 682 S.W.3d 896, 904-05 (Tex. App.—Dallas 2023).

summarily stated that "Fossil took no remedial action after Harris sent the email."[10]  Fossil petitioned this Court for review, which we granted.[11]

**II**

Section 21.051 of the Texas Labor Code, which is modeled on Title VII of the Civil Rights Act of 1964, makes it unlawful for an employer to discriminate "against an individual in connection with compensation or the terms, conditions, or privileges of employment" because of sex.[12]  Following federal case law holding that Title VII

---

[10] *Id.* at 905.

[11] In the trial court, Harris also sued Brown individually for intentional infliction of emotional distress.  Brown filed a motion for summary judgment on her claim, which the trial court granted.  Although Harris purported to appeal the rulings in favor of Fossil *and* Brown in her notice of appeal, she identified Fossil as the only appellee in her appellate brief, made no argument with respect to her claim against Brown, and prayed only that the court of appeals reverse the judgment as to Fossil.  Brown nevertheless filed a response brief urging that Harris had waived any error as to his favorable judgment and asking that it be affirmed.  In its opinion, the court of appeals did not mention Harris's claim against Brown or list him as a party. *See id.* at 896.  The court of appeals' judgment lists Brown as an appellee but reverses only "the trial court's order granting Fossil's motion for summary judgment" without mentioning the order dismissing the claim against Brown.  We conclude that Harris waived any challenge to the trial court's judgment with respect to Brown by failing to brief it. *See Nall v. Plunkett*, 404 S.W.3d 552, 556 (Tex. 2013) (holding that issues not raised in a brief to the court of appeals are waived); *see also* TEX. R. APP. P. 38.1(f)–(i).  We therefore treat the court of appeals' judgment as having affirmed the portion of the trial court's judgment dismissing Harris's claim against Brown. *Cf. Allen v. Allen*, 717 S.W.2d 311, 312 (Tex. 1986) ("The absence of any reference to pleaded alternative grounds of recovery does not render an order intrinsically interlocutory.  All pleaded issues are presumed to be disposed of, expressly or impliedly, by the trial court's judgment absent a contrary showing in the record.").

[12] TEX. LAB. CODE § 21.051(1); *see* 42 U.S.C. § 2000e-2(a)(1).

7

prohibits sexual harassment,[13] we have recognized that a statutory cause of action for a hostile work environment[14] arises when (1) an employee was subjected to unwelcome sexual harassment, (2) the employee was harassed because of his or her sex, (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile work environment, and (4) some basis exists for holding the employer liable.[15]

The issue in this appeal is whether there is some basis for holding Fossil liable for Brown's harassing conduct. The parties agree that, in

---

[13] An express purpose of Chapter 21 is to "provide for the execution of the policies of Title VII" as enacted and amended. TEX. LAB. CODE § 21.001(1). Consistent with that purpose, this Court has looked to federal law for guidance when applying the state act's analogous statutory language. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 & n.25 (Tex. 2010).

[14] Sexual-harassment claims may also take the form of "quid pro quo harassment, in which employment benefits are conditioned on sexual favors." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 n.5 (Tex. 2004). Harris does not allege quid pro quo harassment.

[15] *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018); *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("'The phrase "terms, conditions, or privileges of employment" evinces a congressional intent "to strike at the entire spectrum of disparate treatment of men and women" in employment,' which includes requiring people to work in a discriminatorily hostile or abusive environment." (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986))); *Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 225 (Tex. App.—Austin 2010, no pet.) (noting that the purpose of a hostile-work-environment claim "is not to combat sexual harassment as an end in itself, however reprehensible such harassment may be, but to provide a remedy when sexual harassment rises to a level so 'extreme' and 'abusive' that it deprives the victim of equal opportunity in the workplace").

The Labor Code now expressly prohibits sexual harassment, *see* TEX. LAB. CODE §§ 21.141–.142, but those provisions do not apply to claims based on conduct occurring before September 1, 2021, *see* Act of May 14, 2021, 87th Leg., R.S., ch. 172, §§ 2–3, 2021 Tex. Gen. Laws 378, 379.

this case, the standard for liability requires evidence that the employer "knew or should have known of the conduct" and failed to take prompt remedial action.[16] In other words, an employer is liable if it is negligent in having actual or constructive knowledge of the harassment and failing to take prompt remedial action to stop it.[17]

---

[16] Our courts of appeals, as well as federal courts applying Title VII, have consistently articulated this standard for sexual-harassment claims. *See, e.g.*, *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 457 (5th Cir. 2024); *Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 435 (5th Cir. 2023); *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 910 (8th Cir. 2006); *In re Parkland Health & Hosp. Sys. Litig.*, No. 05-17-00670-CV, 2018 WL 2473852, at *8 (Tex. App.—Dallas June 4, 2018, orig. proceeding); *Tex. Dep't of Fam. & Protective Servs. v. Whitman*, 530 S.W.3d 703, 710 (Tex. App.—Eastland 2016, no pet.); *Smith v. Carter BloodCare*, No. 02-12-00523-CV, 2014 WL 1257273, at *6 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.); *Twigland Fashions*, 335 S.W.3d at 218.

[17] *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) ("An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it."); *Johnson*, 90 F.4th at 457 ("When the harasser is a co-worker, 'the negligence standard governs employer liability,' and employers are only negligent if they 'knew or should have known about the conduct and failed to stop it.'" (quoting *Hudson v. Lincare, Inc.*, 58 F.4th 222, 229-30 (5th Cir. 2023))); *see also Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651, 656 (5th Cir. 2012) (applying the "knew or should have known" standard in the Title VII context by looking for evidence of actual or constructive knowledge of the harassment); *Smith*, 2014 WL 1257273, at *3, *6-8 (same for a Chapter 21 hostile-work-environment claim).

When the harasser is a supervisor, the employer may be vicariously liable for the supervisor's conduct in creating a hostile work environment, without establishing the employer's negligence, because the employer has imbued such persons with "the authority to effect a tangible change in a victim's terms or conditions of employment." *See Vance v. Ball State Univ.*, 570 U.S. 421, 431-40 (2013); *Parkland Health*, 2018 WL 2473852, at *8; *Smith*, 2014 WL 1257273, at *4-5. As Harris concedes in this Court, Fossil had not empowered Brown to hire, fire, or take other tangible employment actions against its employees and, therefore, was not a supervisor for purposes of her

Where, as here, a trial court grants a motion for summary judgment that raises traditional and no-evidence grounds and both parties present evidence, the ultimate issue is whether the nonmovant raised a fact issue to preclude summary judgment.[18] Our review is de novo, and to determine if a fact issue exists, we examine the evidence in the light most favorable to the nonmovant, indulging reasonable inferences and resolving any doubts against the moving party.[19]

## A

We first consider Harris's email to the anonymous reporting system, which the court of appeals relied on to determine that a fact issue exists about Fossil's knowledge of the harassment and its failure to respond.[20] Although the parties primarily dispute whether Harris presented competent evidence that she sent such an email, we need not resolve that matter. Assuming Harris submitted an email complaint in

---

Chapter 21 claim. *Supra* note 6; *see Vance*, 570 U.S. at 431 ("We hold that an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim."); *Arredondo*, 81 F.4th at 433 (noting that a "supervisor" is the person "the *employer* has empowered," not who the plaintiff perceives to be a supervisor). We express no opinion on whether this understanding of "supervisor" applies to the recently enacted Sections 21.141(2) and 21.142 of the Labor Code. *See supra* note 15.

[18] *See* TEX. R. CIV. P. 166a(c), (i); *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019) (noting that when both parties presented summary-judgment evidence on a hybrid motion, the varying burdens for the different types of motions are immaterial).

[19] *Scripps NP Operating*, 573 S.W.3d at 790.

[20] 682 S.W.3d 896, 904-05 (Tex. App.—Dallas 2023).

"late April 2019," there is no genuine issue of material fact that Fossil failed to take prompt remedial action.[21]

Prompt remedial action must be reasonably calculated to end the harassment—a fact-specific and context-dependent inquiry.[22] Here, it is undisputed that the store manager notified human resources about Brown's harassing conduct on May 9, the day after learning about it from a Third Key employee; human resources then began an investigation; Fossil fired Brown at the end of May; and Brown did not work with Harris or K.K. during that time period. All this occurred approximately within a month of Harris's late April email and was reasonably calculated to (and did) end any harassment by Brown.[23]

---

[21] *See Gulf States Toyota, Inc. v. Morgan*, 89 S.W.3d 766, 771 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (explaining that to prevail on a claim for sexual harassment by a coworker, the employee bears the burden to establish the employer did not take prompt remedial action); *cf. Hudson*, 58 F.4th at 230 ("[A]n employer is not negligent when it takes prompt remedial action that is reasonably calculated to end the harassment." (internal quotation marks omitted)); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 437 (5th Cir. 2005) (noting that a company on notice of sexual harassment may avoid Title VII liability by taking prompt remedial action).

[22] *River Oaks L-M. Inc. v. Vinton-Duarte*, 469 S.W.3d 213, 228 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Gulf States Toyota*, 89 S.W.3d at 771; *McMillon v. Tex. Dep't of Ins.*, 963 S.W.2d 935, 939 (Tex. App.—Austin 1998, no pet.); *cf. Johnson*, 90 F.4th at 456 (explaining that a Title VII inquiry of whether there was prompt remedial action is fact specific); *Hudson*, 58 F.4th at 230 (noting that prompt remedial action must be reasonably calculated to end the harassment to avoid Title VII liability).

[23] *Cf. Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 912 (8th Cir. 2006) (noting that "[t]he firing of the harasser in a hostile work environment case can effectively bar a plaintiff's claim," although some cases have concluded otherwise "where the employer waited much longer than one month to terminate the employee"); *cf. also, e.g., Johnson*, 90 F.4th at 456 (holding that an eleven-day delay to commence investigation after a complaint

11

That the actions were taken in response to Fossil's learning of the harassment from another source does not change their remedial nature, so long as they were sufficiently prompt from the time Fossil first received notice.

Although Fossil's response did not immediately follow the late April email, complainants often must "tolerate some delay" for the employer to gauge the complaint's credibility and the seriousness of the situation,[24] especially when a complaint is sent through an anonymous reporting system. Within days of sending the email, however, Harris voluntarily resigned on May 2 (effective May 4) without giving Fossil a reasonable time to address her complaint while she was still employed.[25] Her resignation also lessened the urgency for the employer to respond

---

"does not demonstrate that [the employer's] response was unreasonably calculated to end the harassment"); *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 421 (8th Cir. 2010) (concluding that twenty-one days was a reasonable time for the employer to investigate a complaint, formulate a remedy, and end the harassment); *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 633 (8th Cir. 2000) (holding that no rational jury could conclude that a nine-day delay to investigate a sexual-harassment complaint was not prompt); *Smith v. Carter BloodCare*, No. 02-12-00523-CV, 2014 WL 1257273, at *8 (Tex. App.— Fort Worth Mar. 27, 2014, no pet.) (concluding that a fifteen-day investigation before firing harasser was prompt remedial action).

[24] *Alvarez*, 626 F.3d at 421 (quoting *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 988 (8th Cir. 1999)); *see Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309 (5th Cir. 1987) ("Since the demise of the institution of dueling, society has seldom provided instantaneous redress for dishonorable conduct."). *But see* TEX. LAB. CODE § 21.142 (requiring "immediate and appropriate corrective action," effective September 1, 2021); *supra* note 15.

[25] *Cf. Lopez v. Whirlpool Corp.*, 989 F.3d 656, 664 (8th Cir. 2021) (holding that when the employee resigned four business days after notifying the employer, she did not give her employer reasonable time to address her complaint).

to prevent exposing her to ongoing or future harassment and provides further support for the conclusion that Fossil's action of firing Brown one month later was sufficiently prompt as a matter of law.

Harris acknowledged that no one at Fossil terminated her employment or took any adverse employment action against her, and she did not plead or allege retaliation or constructive discharge.[26] In the absence of a constructive discharge, a plaintiff can "make out a statutory sexual-harassment claim" by "show[ing] that she remained in her position and endured a hostile work environment."[27] After her late April email, however, Harris worked only three more days—on April 28,[28] May 3, and May 4—and she has provided no evidence of a hostile work environment on those days. And by then, Harris had blocked Brown from her social-media account—the primary source of harassment.

Depending on the circumstances and seriousness of the alleged harassment, an employer may need to take intermediate steps to address the situation while it evaluates a complaint.[29] In this

---

[26] A sexual-harassment claim based on constructive discharge requires "proof that the employer made the working conditions so intolerable that a reasonable person would feel compelled to resign." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010).

[27] *Id.* at 805-06.

[28] The record does not indicate whether the email in "late April" was sent before or after April 28.

[29] *See Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001) (describing the obligation as comprising two parts: "the temporary steps the employer takes to deal with the situation while it determines whether the complaint is justified" and "the permanent remedial steps the employer takes once it has completed its investigation"); *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999) ("What is appropriate remedial action

procedural posture, however, the onus is on Harris to raise a fact issue that interim steps were needed for Fossil to satisfy its obligation.[30] Harris did not meet that burden. Not only was there no evidence of any harassment on April 28, May 3, or May 4, but also the record does not indicate that Brown worked with Harris on those days.

We therefore hold that Harris did not raise a genuine issue of material fact that Fossil failed to take prompt remedial action following her late April email. The court of appeals erred in concluding that "Fossil took no remedial action after Harris sent the email."[31]

## B

We now turn to whether there is evidence that Fossil had actual or constructive knowledge of the harassment—thereby triggering the obligation to take prompt remedial action—before the late April email.[32]

An employer is put on notice of harassment when "a person within the organization who has the 'authority to address the harassment

---

will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989))); *cf. Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 456-57 (5th Cir. 2024) (noting that the employer took steps so that the complainant did not have to interact with her harasser while an investigation was pending, including by relocating the harasser's workspace and instructing the harasser not to have contact with or be around the complainant); *McMillon v. Tex. Dep't of Ins.*, 963 S.W.2d 935, 939 (Tex. App.—Austin 1998, no pet.) (noting that the employer placed the alleged harasser on administrative leave while the investigation was pending).

[30] *See* TEX. R. CIV. P. 166a(i).

[31] 682 S.W.3d 896, 905 (Tex. App.—Dallas 2023).

[32] We have had no occasion to consider what constitutes actual or constructive knowledge for purposes of imposing liability on an employer under

problem' or an 'affirmative duty' to report harassment learns of the harassment in question."[33]  A person who has the "authority to address the harassment problem" will often be in "higher management."[34]  And an individual has an "affirmative duty" to report harassment, for

Section 21.051 for a hostile-work-environment claim.  To argue that it lacked actual or constructive knowledge, Fossil relies primarily on Title VII case law from the United States Court of Appeals for the Fifth Circuit.  Harris neither contests Fossil's use of federal precedent nor proposes an alternative standard.  Accordingly, we consider this issue guided by Fifth Circuit case law.  *See Tex. Tech Univ. Health Scis. Ctr.–El Paso v. Niehay*, 671 S.W.3d 929, 937 (Tex. 2023) (recognizing that "federal–state synchronization" and "consistency" between Chapter 21 and federal discrimination law are "desirable, and while federal authorities do not bind us, they frequently assist us in our independent obligation to construe Texas law"); *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136-37 (Tex. 2015) ("We look to relevant federal law for guidance when the relevant provisions of Title VII are analogous."); *supra* note 13; *see also Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020) (noting that our adversarial system generally depends on the parties to frame the issues for decision).

[33] *Abbt v. City of Houston*, 28 F.4th 601, 607 (5th Cir. 2022) (quoting *Williamson v. City of Houston*, 148 F.3d 462, 466 (5th Cir. 1998)); *see Johnson*, 90 F.4th at 457 ("[T]he key to whose knowledge may be imputed to the employer is remedial power: There is no actual knowledge until someone with authority to address the problem is notified." (alteration in original) (quoting *Sharp v. City of Houston*, 164 F.3d 923, 929-30 (5th Cir. 1999))).

[34] *Sharp*, 164 F.3d at 929 ("A title VII employer has actual knowledge of harassment that is known to 'higher management' or to someone who has the power to take action to remedy the problem."); *see Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 755 (10th Cir. 2014) ("In assessing whether an employer was negligent in dealing with known harassment, '[a]ctual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to management-level employees.'" (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998))); *Mackey v. U.P. Enters., Inc.*, 935 S.W.2d 446, 457 (Tex. App.—Tyler 1996, no writ) ("[A]n employee can demonstrate that her corporate employer knew of the harassment by showing that she complained to 'higher management' of the harassment[.]" (quoting *Bundy v. Jackson*, 641 F.2d 934, 943 (D.C. Cir. 1981))).

15

example, when an employer's policy provides that person with "the authority to accept harassment complaints" and "place[s] an affirmative duty on him to pass such information up the chain of command."[35]

The constructive-knowledge inquiry likewise homes in on these same "appropriate persons" within the organization but asks whether they "should have known" of the harassment through the exercise of reasonable care.[36] In effect, for an employer to have constructive

[35] *Williamson*, 148 F.3d at 466 & n.1; *see id.* at 466 ("When an organization designates a particular person or persons to receive harassment complaints, it sends a clear signal that those persons have the authority to accept notice of harassment problems."). Other United States Courts of Appeals have taken similar approaches. *See, e.g.*, *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 10 (1st Cir. 2011) ("If an employer has designated a particular individual to accept notice of harassment, notice to that individual ordinarily will satisfy Title VII's knowledge requirement vis-à-vis employer liability."); *Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009) (imputing knowledge if a "co-worker has an official or strong de facto duty to act as a conduit to management for complaints about work conditions" (quoting *Torres v. Pisano*, 116 F.3d 625, 636-37 (2d Cir. 1997))); *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 107-08 (3d Cir. 2009) (applying agency principles to impute knowledge when an employee is designated as the "point person" for receiving harassment complaints "based on the specific mandate from the employer to respond to and report on sexual harassment"); *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000) (imputing knowledge if an employee reports suspected sexual harassment to an individual specifically designated by the company policy to receive harassment complaints); *Young v. Bayer Corp.*, 123 F.3d 672, 675 (7th Cir. 1997) (focusing on, for the purpose of imputing knowledge, "whether the information comes to the attention of someone who ought by specification of his duties or, failing that, general norms of management to do something about it, either directly or by referring the matter to some other corporate employee").

[36] *Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 435 (5th Cir. 2023) ("Ultimately, a company can only be said to have constructive knowledge of a hostile work environment where 'the appropriate persons within' the company, meaning someone with 'remedial power over the harasser[,]' 'knew or should have known' about the situation." (quoting *Sharp*, 164 F.3d at 930)).

16

knowledge, the harassment must have been "so open and pervasive" that the appropriate persons should have known of it had the employer "opened its corporate eyes."[37]  However, "[a] holding that an employer had constructive knowledge will be less likely if it had in place a procedure by which employees could report instances of harassment."[38]

We cannot conclude there is evidence that any "appropriate persons" within Fossil knew or should have known about Brown's harassing conduct before late April.  Fossil's employment policy designates the employee's manager (or another member of management if the employee is uncomfortable contacting her manager) and members of its human resources department as the individuals to receive harassment complaints.  The policy also places an affirmative duty on managers and supervisors who suspect harassment is occurring, receive a complaint, or witness harassing behavior "to report such suspected harassment to Human Resources."  But here, the store manager Zaborowicz learned about Brown's harassing conduct from Third Key employees only at the end of April and beginning of May.  Harris also admitted she did not tell anyone in management about the harassment until after she resigned in early May and does not claim anyone in

---

[37] *Id.* (quoting *Sharp*, 164 F.3d at 930); *Sharp*, 164 F.3d at 930 ("Of course, harassment by definition always will be open and pervasive as to some group, if only as to the harasser and victim.  But that is not enough.  To impute constructive knowledge to the employer, we must find constructive knowledge on the part of someone whose actual knowledge also would impute knowledge to the employer.").

[38] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 656 (5th Cir. 2012).

human resources knew about the harassment before the late April email.

There is some evidence that certain Fossil employees knew about Brown's harassing conduct before late April, including K.K., two other sales associates, and at least one Third Key employee. But Harris did not adduce evidence that any of these individuals were authorized to address the harassment or were managers or supervisors that had an affirmative duty under Fossil's employment policy to receive harassment complaints and report them up the chain of command. And Fossil submitted evidence to the contrary, including (1) corporate job descriptions for Third Key employees and sales associates, neither of which described or imposed any such authority or duty for those roles, and (2) an affidavit from its human resources manager, who averred that a Third Key employee "has no supervisory responsibility over any employees."[39]

In sum, there is no evidence to raise a fact issue that any "appropriate persons" within Fossil knew about the harassing conduct before late April or that Fossil would have known of the harassment, which mostly occurred off-site through social media, had it opened its corporate eyes.

---

[39] Harris also argues that Fossil should have known about Brown's harassing conduct because he was fired for sexual harassment by his previous employer, Old Navy. *See supra* note 8. In his deposition, Brown admitted he would have informed Fossil about the reasons for his separation from Old Navy if he had been asked in his job interview. But Fossil presented evidence that when Brown interviewed, he represented in his resume that he was currently employed by Old Navy. Fossil therefore had no reason to ask why he had left that job. And Harris presented no other evidence that Fossil had reason to know about Brown's sexually harassing conduct at Old Navy.

*   *   *

Our holding today does not minimize the seriousness of Brown's misconduct in sending unwanted sexually explicit social-media content or any anguish Harris may have suffered. All agree Brown's harassing conduct was reprehensible. But Harris failed to adduce evidence to hold her employer, Fossil, liable for Brown's actions. We therefore reverse the court of appeals' judgment and render judgment reinstating the trial court's take-nothing judgment.

John P. Devine
Justice

**OPINION DELIVERED:** June 14, 2024

19